IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NEAL A. CUPERSMITH, *et al.*,

        Plaintiffs,

  v.

PIAKER & LYONS, P.C., *et al.*,

        Defendants.

Civil Action No.
3:14-CV-1303 (TJM/DEP)

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFFS:

KANG HAGGERTY & FETBROYT LLC    EDWARD T. KANG, ESQ.
123 South Broad Street, Suite 1670    GREGORY H. MATHEWS, ESQ.
Philadelphia, PA 19109                  DAVID P. DEAN, ESQ.
                                       JACKLYN FETBROYT, ESQ.

FOR DEFENDANTS:

JAECKLE, FLEISCHMANN &            CHARLES SWANEKAMP, ESQ.
MUGEL, LLP                              BRADLEY A. HOPPE, ESQ.
Avant Building, Suite 900              DIANE PIETRASZEWSKI, ESQ.
200 Delaware Avenue
Buffalo, NY 14202


DAVID E. PEELBES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

This is an action arising out of a Ponzi scheme operated by McGinn Smith & Co., Inc., and several affiliated companies and individuals (collectively "McGinn Smith") brought by a group of investors who suffered financial losses as a result of the fraud. Currently pending before the court are discovery-related cross-motions. At issue in those motions is whether the claims of Macon L. Dixon, Audrey E. Dixon, Barry DeSantis, and Jeanne A. DeSantis should be dismissed based upon their refusal to appear for deposition or whether lesser sanctions are instead warranted. Also implicated in the cross-motions is whether the court should preclude the defendants from taking the deposition of William Lex, a non-party who served as a broker and/or investment advisor for all or some of the plaintiffs in connection with the McGinn-Smith investments. For the reasons set forth below, plaintiffs' motion for protective order against the taking of the Lex deposition is denied, and I recommend that the claims of the Nixons and DeSantises be dismissed.

I. BACKGROUND

Plaintiffs commenced this action on September 11, 2014. Dkt. No. 1. In their complaint plaintiffs, a group of seventy investors, assert claims based upon economic losses suffered as a result of the large-scale fraud

scheme perpetrated by the various related McGinn-Smith entities and individuals. *See, e.g, id.* at 2. Those claims are brought against Piaker & Lyons, P.C., which served as McGinn Smith's auditor and tax preparer, as well as Ronald L. Simons and Timothy N. Paventi, with whom it allegedly worked while the Ponzi scheme was being operated. *Id.* While plaintiffs' complaint originally asserted four causes of action, the sole remaining claim alleges that defendants aided and abetted the fraud committed by McGinn Smith. *Id.* at 28-30.

On May 14, 2015, defendants moved for relief from the ten-deposition limit set forth in Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure. Dkt. No. 53. The motion centered principally upon whether all seventy of the plaintiffs should be deposed. *Id.* After hearing arguments concerning the relevance of the depositions sought by defendants, and applying the rule of proportionality previously found in Rule 26 of the Federal Rules of Civil Procedure, I issued an order on June 24, 2015, granting defendants leave to conduct depositions, in-person and within the Northern District of New York, of any plaintiff or related plaintiffs (*e.g.*, husband and wife) whose McGinn-Smith investment equaled or exceeded $100,000.[1] Dkt. No. 62. The Nixons and DeSantises fall into this category. Dkt. No. 87-1 at 2.

---

[1] Under the order, only one deposition was to be taken of related investors, such as Macon and Audrey Nixon and Barry and Jeanne DeSantis. Dkt. No. 62.

Following the issuance of that order, and after conferring, defendants proposed a schedule under which the Nixons would appear in Florida for deposition, despite the court's ruling that they must be deposed in the Northern District of New York, and the DeSantises would be deposed in Syracuse, New York. Dkt. Nos. 87-2, 87-3. The dates, times and locations for the Nixon and DeSantis depositions were later confirmed by e-mail communication from defendants' counsel to plaintiffs' attorneys, dated August 12, 2015. Dkt. No. 87-3 at 2-3.

After subsequent discussions between counsel for the parties concerning the precise scheduling of the required depositions, and having been unable to obtain confirmation of the scheduled deposition dates, defendants' counsel issued deposition notices for the Nixons and the DeSantises and, in the case of the Nixons, a later revised notice. Dkt. No. 87-1 at 3-4; Dkt. Nos. 87-4, 87-8, 87-11. Following the issuance of the revised notice of deposition for the Nixons, those plaintiffs submitted a letter request to the court seeking a protective order excusing them from appearing for a deposition in Florida. Dkt. No. 76. That request was denied by the court on October 27, 2015. Dkt. No. 79.

According to defendants' counsel, neither the Nixons nor the DeSantises have appeared for deposition. Dkt. No. 87-1 at 5, 6-7. On

4

October 27, 2015, plaintiffs' attorney e-mailed counsel for the defendants advising that, despite the issuance of prior orders and service of deposition notices, the Nixons would not be attending the scheduled deposition and were "prepared to withdraw their claims from the lawsuit if the Court so orders as a result of their not attending the deposition." Dkt. No. 87-9. On October 29, 2015, the date of the scheduled deposition, Macon Nixon in fact failed to appear. Dkt. No. 87-10.

In light of the failure of plaintiffs' counsel to commit to a deposition date for the DeSantis deposition, defendants scheduled the deposition for December 1, 2015, and forwarded a notice of deposition to that effect to plaintiffs' counsel. Dkt. No. 87-1 at 6; Dkt. No. 87-11. Defendants' counsel did not hear anything from plaintiffs' attorneys concerning the scheduled deposition until November 30, 2015, the day before it was to take place, when, in response to efforts by defendants' counsel to confirm the deposition, plaintiffs' attorneys advised defendants that Barry DeSantis would not appear for his deposition. Dkt. No. 87-1 at 6-7; Dkt. No. 87-12. On the date of the scheduled deposition, Barry DeSantis failed to appear despite being aware, according to plaintiffs' counsel, of the possibility that his claim would be dismissed if he did not attend. Dkt. No. 87-1 at 7.

In addition the issues relating to the Nixon and DeSantis depositions,

plaintiffs have raised an additional discovery-related issue, seeking protection from efforts by defendants to take the deposition of William Lex, a broker and investment advisor who sold the fraudulent McGinn-Smith investments in question to many of the plaintiffs.[2] Dkt. No. 86-2. Although this is not clearly stated in the motion papers now before the court, it appears that Lex was subpoenaed to be deposed as a non-party witness and that the deposition was to occur in the Eastern District of Pennsylvania on December 11, 2015. Dkt. No. 80. That deposition is apparently now being held in abeyance pending the issuance of this decision. Without a great deal of specifics, other than to say that "[p]laintiffs' counsel retained Mr. Lex as a consultant in this litigation to act as a liaison between [p]laintiffs' counsel and [p]laintiffs,'" raising a specter of the attorney-client privilege and work product doctrine, plaintiffs have asked the court to preclude the defendants' taking of the deposition of Mr. Lex. Dkt. No. 86-2.

II.  DISCUSSION

   A.  The Nixon and DeSantis Depositions

Defendants' motion for sanctions is brought pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure. That rule sets forth various forms of relief available to a court in the event of a party's failure to comply with an

---

[2] Defendants sought court permission to depose William Lex on October 15, 2015, and the court granted the request on the following day. Dkt. Nos. 74, 75.

order "to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2)(A). It is true that the court's June 24, 2015 order did not specifically compel the Nixons and DeSantises to appear for deposition. Dkt. No. 62. It clearly did, however, "permit" defendants to take those depositions and, therefore, defendants' motion falls squarely within the provisions of Rule 37(b)(2).

Even if the matter were not controlled by Rule 37(b)(2), the Nixons and DeSantises would be subject to the provisions of Rule 37(d), which governs in the case of a party's failure to appear for deposition as directed in a proper notice of deposition. Fed. R. Civ. P. 37(d). That rule provides, in relevant part, that "[t]he court where the action is pending may, on motion, order sanctions if: (i) a party. . . fails, after being served with proper notice, to appear for that person's deposition[.]" Fed. R. Civ. P. 37(d)(1)(i). The rule also provides that "[s]anctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(3).

Among the sanctions authorized under Rule 37(b)(2)(A) is an order "dismissing the action or proceeding in the whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v); *S.E.C. v. Razmilovic*, 738 F.3d 14, 24 (2d Cir. 2013). Neither the Nixons nor the DeSantises have offered and substantiated any reason – financial, medical, or otherwise – why they are unable to appear for deposition in connection with their claims in this matter. Moreover, it has

7

been made clear by plaintiffs' counsel that, if pressed, their clients will not appear for deposition even in the face of the potential for dismissal of their claims. In light of these circumstances, any lesser sanction than dismissal of plaintiffs' claims would be ineffective and unfair to defendants. I therefore conclude that the sanction of dismissal of all claims brought by the Nixons and DeSantises in this case is warranted and that, in light of their defiance of defendants' legitimate efforts to take their depositions, despite awareness that, as a consequence of their refusals their claims could be dismissed, no lesser sanction would be appropriate and meaningful.

B.  William Lex

Turning to the subpoena issued to non-party witness William Lex, I conclude that plaintiffs have failed to demonstrate both that they possess standing to challenge the defendants' intention to take his deposition and a basis to quash the subpoena that has apparently been served on Lex.[3] Although the specter of the attorney-client privilege and attorney

---

[3] I note, parenthetically, that to the extent plaintiffs could be deemed to have standing to move to quash the subpoena issued to Lex, the proper venue for such a motion would be in the Eastern District of Pennsylvania in the first instance, where compliance with the subpoena is apparently to occur. Fed. R. Civ. P. 45(d)(3). Of course, that court could transfer a motion to quash or to enforce the subpoena to this court, where the underlying action is pending, with consent of the subpoenaed party or if the court were to find the existence of exceptional circumstances to effectuate such a transfer. Fed. R. Civ. P. 45(f); *In re UBS Fin. Servs., Inc. of Puerto Rico Secs. Litig.*, --- F. Supp. 3d ----, No. 15-MC-0191, 2015 WL 4148857, at *1 (D. D.C. July 9, 2015).

8

work-product doctrine has been raised by plaintiffs, at oral argument, defendants expressed their intention to limit questioning of Lex to circumstances surrounding his actions as a broker for McGinn Smith, as well as their intent to avoid inquiry concerning communications between Lex and plaintiffs' counsel pertaining to this litigation. Accordingly, the question of the attorney-client privilege and attorney work-product doctrine does not appear to be in play. In the event that questions are asked at the deposition that would implicate either the attorney-client privilege or the work-product doctrine, plaintiffs' counsel may lodge an objection to that question, and the matter can be preserved for further consideration by the court.

Because plaintiffs have failed to make a proper showing as to why defendant Lex should not be deposed, their motion for a protective order precluding defendants from taking his deposition is denied based upon their failure to meet their burden of establishing good cause for the issuance of such a protective under Rule 26(c) of the Federal Rules of Civil Procedure.

III.   SUMMARY, ORDER, AND RECOMMENDATION

After having heard arguments concerning relevance and proportionality, the court issued an order permitting defendants to take the deposition of any plaintiff or related plaintiffs whose combined investments with the McGinn Smith group exceeded $100,000. Despite that order, two

sets of plaintiffs, Macon and Audrey Nixon and Barry and Jeanne DeSantis – all of whom fall into the $100,000-category – have refused to appear for deposition under circumstances indicating their awareness that their failure to sit for deposition could result in dismissal of their claims. Under these circumstances, and not having been presented with any legitimate, substantiated reason why the Nixons and DeSantises cannot appear in person for depositions in this matter, and finding that no lesser sanction would be effective given their steadfast refusing to appear for deposition even if it means their claims in the action are dismissed, I respectfully recommend that the court dismiss their claims.

Turning to the issue of William Lex, I conclude that plaintiffs lack standing to oppose the Lex deposition. Accordingly, plaintiffs' motion for a protective order against the defendants' taking of that deposition will be denied, and the court will reiterate its prior ruling granting permission to the defendants to take the deposition of Mr. Lex.

Based upon the foregoing, it is hereby

ORDERED that plaintiffs' motion for a protective order against the taking of the depositions of the Nixons, the DeSantises, and William Lex (Dkt. No. 86) is DENIED; and it is further

ORDERED that defendants' request for permission to take the

deposition of Mr. Lex, which was previously granted, Dkt. No. 75, is again GRANTED; and it is further

ORDERED that defendants are awarded the costs, including reasonable attorney's fees, incurred in preparing their cross-motion, as well as preparing for the Nixon and DeSantis depositions. Defendants' counsel may make a fee application to the court, properly supported in accordance with relevant Second Circuit authority, on or before January 29, 2016. Plaintiffs will then have fourteen days from the date of filing of that fee application to oppose the application. Defendants' request for costs and attorney's fees is granted pursuant to Rules 37(a)(5), 37(b)(2)(C), and 37(d)(3) of the Federal Rules of Civil Procedure; and it is further hereby respectfully

RECOMMENDED that defendants' cross-motion for sanctions (Dkt. No. 87) be GRANTED and that the claims of Macon L. Nixon, Audrey E. Nixon, Barry DeSantis, and Jeanne A. DeSantis in this matter be DISMISSED based upon their failure to appear for deposition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993); and it is further hereby

The clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: January 14, 2016
Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge