*EXHIBIT A*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OR NEW YORK

|  |  |  |
|---|---|---|
| NEAL A. CUPERSMITH, *et al.* | : | 3.14 − cv- 01303-TJM-DEP |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| PIAKER & LYONS P.C., *et al.* | : |  |
|  | : |  |
| Defendants. | : |  |

Expert Report

by

Stephen J. Scherf, CPA, CFF, CFE

September 17, 2015

## TABLE OF CONTENTS

**1. BACKGROUND** ................................................................................................. **2**

**2. BASIS FOR ANALYSIS** ..................................................................................... **9**

**3. ANALYSIS** ........................................................................................................ **10**

    3.1. THE PONZI SCHEME ...................................................................................... 10

    3.2. APPLICABLE PROFESSIONAL STANDARDS ................................................. 11

    3.2.1    AICPA Code of Professional Conduct ................................................ 11

    3.2.2    Rule 102 – Integrity and Objectivity ................................................. 12

    3.2.3    Rule 201 – General Standards............................................................ 13

    3.2.4    Rule 202 – Compliance with Standards.............................................. 13

    3.2.5    Statement on Standards for Tax Services ........................................... 13

    3.3      ANALYSIS OF DEFENDANTS' DEPARTURE FROM PROFESSIONAL STANDARDS ... 14

    3.4      ANALYSIS OF DEFENDANTS' CONTRIBUTION TO DAMAGES TO INVESTORS AND RELATED ISSUES ................................................................................................ 26

    3.5      DAMAGES ..................................................................................................... 28

    3.5.1    Analysis of Losses Suffered by the Plaintiffs.................................... 28

    3.5.2    Prejudgment Interest ......................................................................... 28

**4. CONCLUSION**.................................................................................................... **29**

Appendix A: *Curriculum vitae* of Stephen J. Scherf, CPA, CFF, CFE

Appendix B: Documents Considered

Exhibit 1 – Damages



215 S. Broad Street, 3rd Floor       215 893 9901
Philadelphia, PA 19107               215 893 9903

## NEAL A. CUPERSMITH, ET AL.
## V.
## PIAKER & LYONS P.C., ET AL.

I have been engaged by counsel ("Kang, Haggerty & Fetbroyt, LLC") for Neal A. Cupersmith et al. ("Plaintiffs") to: (1) Determine whether Defendants Piaker & Lyons P.C. ("Piaker"), Ronald L. Simons ("Simons") and Timothy N. Paventi ("Paventi"), collectively referred to as ("Defendants"), knowingly or recklessly disregarded applicable professional standards in connection with the performance of certain services provided to McGinn Smith & Co., Inc. and certain related entities[1] ("MS" or "McGinn Smith") whom for many years operated a Ponzi scheme and (2) Determine the amount of damage sustained by Plaintiffs as a result of the actions of the Defendants. I understand that of the counts in the complaint that remain are fraud[2] and aiding and abetting fraud.[3] As a result, our analysis will not address the other counts in the complaint.

This report sets out the results of our analysis and is structured as follows:

1. Background
2. Basis for Analysis
3. Analysis
4. Conclusions
   Appendix
   Exhibit

---

[1] To be defined more fully in the following section.

[2] Under New York law, the elements of fraud are: "(1) defendant made a material, false representation; (2) defendant intended to defraud the plaintiff thereby; (3) plaintiff reasonably relied upon the representation; and (4) plaintiff suffered damage as a result of the reliance." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 494 (S.D.N.Y. 2001).

[3] Under New York law, the elements of aiding and abetting fraud are: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 464 (S.D.N.Y. 2009).

# 1. BACKGROUND

For purposes of the opinions expressed in this report, I have assumed the following facts are true and correct.

### McGinn and Smith and their affiliated entities

McGinn, Smith & Co., Inc. ("MS") was a registered broker-dealer established in 1981 by Timothy McGinn ("McGinn") and David Smith ("Smith").[4]  During the period from 2003 to 2009, Smith owned 50% of MS, McGinn owned 30% and 20% was owned by others.   At the end of 2009, MS began winding down its broker-dealer business.  McGinn Smith Advisors, LLC ("MS Advisors"), an SEC registered investment advisor, is a wholly owned subsidiary of McGinn Smith Holdings LLC.  MS Advisors served as investment adviser to the Funds (as defined below) until April 2009. McGinn, Smith Capital Holdings Corp. ("MS Capital"), another affiliated entity is owned by MS Holdings LLC (52%), McGinn (24%) and Smith (24%).  MS Capital is indenture trustee for the Funds and the trustee for all the Trusts (as defined below) created between 2006 and 2009. Smith was President of MS Capital and McGinn was chairman of its board of directors.

Between 2003 and 2009, McGinn and Smith, acting through MS and MS Advisors, raised over $136 million dollars in more than 20 unregistered debt offerings, including the Four Funds (the "Funds") and numerous trust entities (the "Trusts").   McGinn and Smith, directly or indirectly, controlled all of the Funds and the Trusts.   All of the bank accounts of the Funds and Trusts were established and controlled by MS and all of the accounting and business records of the Funds and Trusts were maintained by MS.  David P. Rees ("Rees") is an accountant employed by MS from August 2002 through April 2009, and served as Comptroller of MS.  Rees reported to Smith.  Rees and a staff accountant he supervised were responsible for maintaining all the accounting and financial records of the Funds, the Trusts and various McGinn Smith entities.

---

[4] Registered broker-dealers are required as conditions to operating as such, to maintain audited financial statements and a required amount of "net capital" to the protection of customers and the investing public.

### The Funds

The Funds at issue in this report are First Independent Income Notes LLC ("FIIN"); First Excelsior Income Notes LLC ("FEIN"); First Albany Income Notes LLC ("FAIN") and Third Albany Income Notes LLC ("TAIN").  Between 2003 and October 2005, MS Advisors formed the Funds and owned 100% of the membership interest in each fund and was the sole managing member. MS was placement agent for debt offerings made by each of the Funds by means of private placement memoranda ("PPMs").  The Funds raised an aggregate of approximately $90 million from hundreds of investors by issuing Senior Secured Notes, Senior Subordinated Notes and Secured Junior Notes, each bearing interest between 5% and 10.25%, with interest payable quarterly to the note holders and the principal amounts due on various dates between 2004 and 2010.

Each of the PPMs represented that the applicable Fund was,

> Formed to identify and acquire various public and/or private investments, which may include, without limitation, debt securities, collateralized debt obligations, bonds, equity securities, trust preferreds, collateralized stock, convertible stock, bridge loans, leases, mortgages, equipment leases, securitized cash flow instruments, and other investments that may add value to our portfolio . . . .

Each of the PPMs represented with respect to possible transactions with affiliates that,

> [The Fund] may acquire investments from our managing member or an affiliate of our managing partner that has purchased the Investments.  If the Investment is purchased from our managing partner or any affiliate, we will not pay above the price paid by our managing partner or such affiliate for the Investment, other than to reimburse our managing partner or such affiliate for its costs and any discounts that it may have received by virtue of a special arrangement or relationship.  In other words, if we purchase an Investment from our managing member or any of its affiliates, we will pay the same price for the Investment that we would have paid if we had purchased the Investment directly.  We may also purchase securities from issuers in offerings for which McGinn, Smith & Co., is acting as underwriter or placement agent and for which McGinn, Smith & Co. will receive a commission.

Although there was no disclosure that the Funds would make any loans to or transfers or investments in affiliated entities, the Funds made such loans, transfers to and investments in

entities owned or controlled by McGinn and Smith (the "McGinn Smith Entities"). By September 2009, over half of all the assets of the Funds had been loaned or invested in McGinn Smith Entities.

Many of the McGinn Smith Entities and the other entities in which the Funds invested did not make interest and other payments to the Funds they were obligated to make.   Even though many of the Funds' investments were non performing, the Funds continued to value these non-performing assets at the original or book value, according to David Rees, the Comptroller of MS. By the end of 2007, MS estimated that the combined book value of the Funds was approximately $69,385,000 and the total notes payable to investors was $86,046,000. MS estimated that the "net realizable" assets of the Funds aggregated only $37,160,299.

As of September 30, 2009, the Funds had revenues generated of only $12.9 million since inception while spending a total of $37 million for a combined loss from operations of $24 million over the time period.

The Trusts

Between 2006 and 2009, MS acted as placement agent for four Firstline Jr. and Sr. 07 offerings (the "Firstline Trusts"); TDM Cable Trust 06 ("TDM Cable 06"); TDM Luxury Cruise Trust 07 ("TDM Cruise"); TDM Verifier Trust 07 ("Verifier 07"); TDM Verifier Trust 08 ("Verifier 08"); Cruise Charter Venture Trust 08 ("CCV Trust"); Fortress Trust 08 ("Fortress Trust"); Integrated Excellence Jr. and Sr. Trusts 08, TDM Cable Trust 08; TDM Verifier Trust 09; TDMM Benchmark Trust 09 ("Benchmark 09"); TDMM Cable Jr. and Sr. Trusts 09 ("TDMM Cable 09"); TDM Verifier Trust 07R, and TDM Verifier Trust 08R and other offerings, including affiliate McGinn Smith Transaction Funding Corp ("MSTF").

The Trusts issued notes to investors with annual interest rates ranging from 7.75% to 13% and maturity dates ranging from approximately 15 months to five years. The Trust offerings indicated the purpose of the Trusts was to invest in promissory notes, in fact, investor funds were used to

pay excessive fees to MS, to pay "earned interest" to other investors, to make "loans" to McGinn, Smith and other affiliates and to cover the payroll of MS.

<u>Involvement of Defendants Piaker & Lyons, Simons and Paventi</u>

Piaker is a New York professional corporation performing accounting services to clients.  Piaker is an accounting firm and member of the American Institute of Certified Public Accountants ("AICPA").  Simons is a certified public accountant, principal and CEO or President of Piaker. Paventi is a Certified Public Accountant and employee of Piaker.

The Defendants prepared tax returns or performed Audits of the above mentioned entities as detailed in *Table 1* below:

**Table 1 – McGinn Smith Entities and the Four Funds, Services by Defendants**

| Entity | Service Performed | Period | Engagement Partner | Staff Acct.[5] | 2nd Partner[6] |
|--------|-------------------|--------|--------------------|----------------|----------------|
| McGinn Smith | Audit, Tax Returns | 2003-2008 | Simons | Paventi | A.   Piaker |
| MS Advisors | Tax Returns | 2003-2007 | Simons | Paventi | |
| MS Capital | Tax Returns | 2003-2008 | Simons | Paventi | |
| FIIN | Tax Returns | 2003-2007 | Simons | Paventi | |
| FEIN | Tax Returns | 2004-2007 | Simons | Paventi | |
| TAIN | Tax Returns | 2004-2007 | Simons | Paventi | |
| FAIN | Tax Returns | 2005-2007 | Simons | Paventi | |

In addition, there were services performed by the Defendants for the principals of McGinn Smith as shown in *Table 2* below:

**Table 2 – McGinn Smih Principals, Services by Defendants**

| Entity | Service Performed | Period | Engagement Partner | Staff Acct. | Preparer |
|--------|-------------------|--------|--------------------|-------------|----------|
| McGinn | Tax Returns | 2003-2008 | Simons | Paventi | |
| Smith | Tax Returns | 2003-2008 | Simons | Paventi | |
| McGinn | Personal Financial Statements | 2007 | | | Simons |
| Smith | Personal Financial Statements | 2007-2008 | | | Simons |

---

[5] In 2003, Anne Eschler and Sally Fults were the staff accountants for the Audit.
[6] Second partner review is valid in Audits only.

CONFIDENTIAL

Subsequent to the Fund offerings, a series of Trusts were established beginning in 2006 which raised over $34 million.  Once again, Simons and Paventi were the team representing Piaker and performing services as shown in **Table 3** below:

**Table 3 – Trust Offerings, Services by Defendants[7]**

| Entity | Service Performed | Period | Engagement Partner | Staff Acct. |
|--------|-------------------|--------|--------------------|-------------|
| Firstline Trust 07 | Tax Returns | 2007-2008 | Simons | Paventi |
| Firstline Trust 07 Series B | Tax Returns | 2007-2008 | Simons | Paventi |
| Fortress Trust 08 | Tax Returns | 2008 | Simons | Paventi |
| Integrated Excellence Senior Trust 08 | Tax Returns | 2008 | Simons | Paventi |
| Integrated Excellence Junior Trust 08 | Tax Returns | 2008 | Simons | Paventi |
| TDM Verifier Trust 08 | Tax Returns | 2007-2008 | Simons | Paventi |
| TDM Verifier Trust 07 | Tax Returns | 2007-2008 | Simons | Paventi |

Beginning in 1992, Piaker performed accounting and auditing services for MS and other affiliated entities as well as serving as personal accountants for McGinn, Smith and other individuals affiliated with MS.  Between 2003 and 2008, Piaker prepared audited financial statements for MS. In addition in 2007, Piaker prepared personal financial statements for McGinn and for Smith and also prepared personal financial statements for Smith through August 31, 2008.

In addition, between 2003 and 2008 Piaker prepared tax returns and related income tax services to MS and MS Holdings and did the same for MS Advisors from 2003 through 2007.  Piaker also prepared the income tax returns for the Four Funds through 2007 and for many of the Trusts. Piaker also prepared the personal income tax returns for McGinn and Smith.

Simons was the partner in charge of all of the engagements and Paventi was the staff accountant on all of the engagements.  In connection with performing the engagements, Piaker, acting through Simons, Paventi and others had extensive dealings and interactions with McGinn, Smith and Rees. In connection with performing the engagements, the Defendants requested and received copies of the PPMs, bank statements, and other records of the Funds, the Trusts, MS, McGinn and Smith.

---

[7] Only those Trusts for which Defendants prepared tax returns are presented.

The proceeds of the Funds and Trust offerings were used to pay investor redemptions and interest for other McGinn Smith offerings; to enrich Smith, McGinn and Matthew Rogers, a Senior Vice President at McGinn Smith; to make loans to entities controlled by McGinn and Smith; and to invest in some performing and other non-performing assets.  Proceeds from these offerings were also used to support McGinn Smith.[8]

McGinn Smith made numerous false and misleading statements or omissions of material fact while their operations made insufficient returns to pay investors and new investor money was used to pay returns on existing investors in a classic Ponzi scheme.[9]  The Ponzi scheme was discovered in 2010 and the Securities & Exchange Commission ("SEC") sued MS, McGinn, Smith and others, including the Funds and Trusts which they controlled.   Subsequently, the principals of McGinn Smith were convicted of numerous federal crimes and Simons, one of the defendants in this action, pled guilty to one count of delivering and disclosing a false tax return.[10]

As summarized in ***Tables 1 through 3***, Defendants performed audits of McGinn Smith and prepared tax returns for various other McGinn Smith entities including the Funds and a number of Trusts.  It must be emphasized and cannot be overstated that not only did the accounting firm, Piaker, perform services but the same individuals, Simons and Paventi, performed a majority of the work, gaining an intimate knowledge of multiple entities involved in the Ponzi scheme.  Plaintiffs allege that Defendants cooperated with McGinn Smith in the fraud which resulted in the Plaintiffs suffering damages.

<u>SEC Civil Action and Criminal Prosecutions</u>

In April 2010, the Securities and Exchange Commission ("SEC") filed a complaint against MS, McGinn, Smith, MS Advisors, MS Capital, the Funds and the Trusts alleging numerous violations

---

[8] Declaration of K. Palen, pg. 7.
[9] A Ponzi scheme occurs when returns to investors in the fund are paid from monies from other investors rather than from the profits generated from the fund.
[10] In delivering and disclosing a false tax return, Mr. Simons violated the AICPA Statements on Standards for Tax Services and in the process violated numerous other AICPA professional standards.

of the antifraud provisions of Section 10(b) and Rule 10b-5 of the Securities Exchange Act against McGinn, Smith, MS, MS Advisors and MS Capital in connection with the offerings of the Funds and Trusts together with other statutory violations.   Subsequently, the federal court for the Northern District of New York, issued a Temporary Restraining Order against the Defendants, preliminarily enjoined them from violation of the securities laws and appointed a receiver to administer the assets of the named defendants for the benefit of investors.

On November 8, 2011, Simons pled guilty to one count of delivering and disclosing a false federal tax return for the year 2006 on behalf of David and Lynn Smith.

On October 11, 2012, a 32 count indictment was filed in the Northern District of New York against McGinn and Smith accusing each of twenty-nine federal crimes including filing false federal income tax returns for 2006, 2007 and 2008.  Following a four week trial in early 2013, the jury convicted McGinn and Smith of numerous counts in the indictment including mail and wire fraud, conspiracy, securities fraud and three counts of filing a false tax return in 2006, 2007 and 2008.

During the criminal trial, Simons testified on behalf of the prosecution and admitted that he prepared false federal income tax returns for David and Lynn Smith for not only 2006 but also 2007 and 2008.  He also admitted that he prepared false federal tax returns for McGinn for 2006, 2007 and 2008.  In addition, he admitted that he prepared false financial statements for McGinn and Smith for 2007 that he submitted on their behalf to the Pennsylvania and Texas Departments of Insurance.  Simons also admitted to making adjusting journal entries to one of the Trusts so that the entity's books would conform to the false information in the tax returns.

McGinn Smith Comptroller David Rees also testified in the criminal trial of McGinn and Smith. He testified that MS had mounting financial difficulties and was kept alive by the private placement revenues.  He explained that in November 2008, McGinn or Smith caused funds to be removed from the bank accounts of the Funds and deposited in the bank account of MS Transaction Funding, then moved to MS to make its payroll.  Even so, he testified that to avoid violating the

Net Capital requirements,[11] he did not record payables on a timely basis in the accounting records of MS.[12]

In a subsequent related SEC administrative proceeding, SEC staff accountant Kerri L. Palen ("Palen") testified at length about the results of her analysis of the financial and accounting records of McGinn Smith and the work papers of Piaker & Lyons.   She testified that based upon such review she believed that Piaker would have known of the fraud conducted by MS, McGinn and Smith.

## 2. BASIS FOR ANALYSIS

The analysis and opinions in this report are based primarily upon the documentation available to date, my independent research, education, and experience in performing similar financial analyses and making determinations as to whether applicable professional standards were adhered to when providing professional accountancy services to the public.   I have been qualified and have presented testimony on numerous occasions, including the presentation of financial analysis in courts throughout the United States.   I am a Certified Public Accountant, past President of the Greater Philadelphia Chapter of the Pennsylvania Institute of Certified Public Accountants ("PICPA") and a former member of PICPA Council and the PICPA Executive Committee.   In addition, I am a Certified Fraud Examiner, Certified Forensic Accountant, and have a Master of Science with a concentration in Finance.   Attached, as *Appendix A*, is my current *curriculum vitae* and information concerning testimony history, publications and speaking engagements.

My analysis was based primarily on the documents and information listed in *Appendix B* and other related documents.   The documents and information utilized are the types of documents and information experts in my field typically rely upon in performing such an analysis.   I, and others

---

[11] McGinn Smith was required to maintain net capital of $100,000 during the relevant time period, according to Rees.
[12] By not recording payables, the accounting records did not reflect all the liabilities of McGinn Smith, and to that extent, falsely represented the amount of its net capital.

under my direct supervision, have performed the analysis contained in this report with the information available to date. Accordingly, I reserve the right to amend this analysis and report should additional or updated information become available. When I testify at trial, I may illustrate my testimony with demonstrative aids such as graphs, charts and/or slides.

I am being compensated at my standard rate of $455 per hour and others in our firm are being compensated on a non-contingent basis at our standard hourly rates. Our fees are not contingent on the outcome of this matter.

This report has been prepared in connection with the above referenced matter and should not be used for any other purpose without our express written consent.

## 3. ANALYSIS

This section addresses: (1) The Ponzi scheme, (2) Whether the Defendants adhered to applicable professional standards when rendering services; and (3) The amount of damages sustained by the Plaintiffs as a result of the actions of the Defendants.

### 3.1. THE PONZI SCHEME

In the ten years prior to 2003, McGinn Smith set up dozens of other Trusts, ("Alarm Trusts") whose Trustee was usually McGinn Smith and Co., Inc. The primary investment vehicle utilized by the Alarm Trusts were security alarm contracts, ("Security Contracts").[13] To raise capital, the Trusts offered Participation Certificates for sale. A majority of the Security Contracts were eventually included as part of an initial public offering and the associated investors' Participation Certificates satisfied. The remaining Trusts, which still retained interests in Security Contracts and had investors via the Participation Certificates, served as the genesis of what would become a Ponzi scheme. Ponzi schemes occasionally begin as legitimate businesses, until the business fails

---

[13] Declaration of Kerri L. Palen, pg. 8.

to achieve the returns expected. The business becomes a Ponzi scheme if it then continues under fraudulent terms.

A Ponzi scheme can be simply defined as paying returns to investors out of funds invested by others rather than profits.  Whatever the initial situation, the perpetuation of the losses requires an ever-increasing flow of money from new investors to sustain the scheme.   Operators of Ponzi schemes commonly entice new investors by offering high returns that are unusually consistent. Ultimately, the scheme collapses when it is discovered or when an insufficient number of new investors are attracted to pay the promised returns and withdrawal demands of earlier investors.

As noted above, between 2003 and 2009, McGinn and Smith, acting through MS and MS Advisors raised over $136 million in more than 20 unregistered debt offerings including the Funds and Trusts. The offerings of the Funds and Trusts promised rates of return to investors that could not be achieved because excessive amounts of offering proceeds were diverted to McGinn Smith and affiliated entities while the investments made by the Funds and Trusts failed to perform.  As a result, funds raised from investors in other private placement offerings were used to pay redemptions and interest due to previous investors.   Regulatory authorities discovered and shutdown the Ponzi scheme in 2010.

### 3.2. APPLICABLE PROFESSIONAL STANDARDS

I evaluated whether Piaker & Lyons P.C.[14] adhered to professional standards by reference to the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct.

#### 3.2.1   AICPA Code of Professional Conduct

According to the AICPA Code of Professional Conduct:

---

[14] According to their website Piaker & Lyons P.C. is a member of the AICPA.

*Neal A. Cupersmith, et al. v. Piaker & Lyons, P.C., et al.*

> "Membership in the American Institute of Certified Public Accountants is voluntary. By accepting membership, a certified public accountant assumes an obligation of self-discipline above and beyond the requirements of laws and regulations. These Principles of the Code of Professional Conduct of the American Institute of Certified Public Accountants express the profession's recognition of its responsibilities to the public, to clients, and to colleagues. They guide members in the performance of their professional responsibilities and express the basic tenets of ethical and professional conduct. The Principles call for an unswerving commitment to honorable behavior, even at the sacrifice of personal advantage."[15]

Members of the AICPA have responsibilities to all those who use their professional services.

> "As professionals, certified public accountants perform an essential role in society. Consistent with that role, members of the American Institute of Certified Public Accountants have responsibilities to all those who use their professional services. Members also have a continuing responsibility to cooperate with each other to improve the art of accounting, maintain the public's confidence, and carry out the profession's special responsibilities for self-governance. The collective efforts of all members are required to maintain and enhance the traditions of the profession." [16]

AICPA members commit to honor the public trust which requires them to perform services and to discharge their responsibilities with integrity, objectivity, due professional care, and a genuine interest in serving the public.[17]

> "A distinguishing mark of a profession is acceptance of its responsibilities to the public. The accounting profession's public consists of clients, credit grantors, governments, employers, investors, the business and financial community, and others who rely on the objectivity and integrity of certified public accountants to maintain the orderly functioning of commerce. This reliance imposes a public interest responsibility on certified public accountants. The public interest is defined as the collective well-being of the community of people and institutions the profession serves."[18]

### 3.2.2   Rule 102 – Integrity and Objectivity

AICPA Code of Professional Conduct Rule 102 – Integrity and Objectivity states:

> "In the performance of any professional service, a member shall maintain objectivity and integrity, shall be free of conflicts of interest, and shall not knowingly misrepresent facts or subordinate his or her judgment to others."

---

[15] Preamble, paragraphs .01 and .02.
[16] ET Section 52, Article 1 – Responsibilities.
[17] ET Section 53, Article 2 – The Public Interest; See also ET Section 54 through 56.
[18] ET Section 53, Article 2 – The Public Interest.

### 3.2.3    Rule 201 – General Standards

When performing professional services, the Defendants were required to follow Rule 201 – General Standards, which states:

> "A member shall comply with the following standards and with any interpretations thereof by bodies designated by Council.
> A. *Professional Competence.* Undertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence.
> B. *Due Professional Care.* Exercise due professional care in the performance of professional services.
> C. *Planning and Supervision.* Adequately plan and supervise the performance of professional services.
> D. *Sufficient Relevant Data.* Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed."[19]

### 3.2.4    Rule 202 – Compliance with Standards

A member who performs auditing, review, compilation, management consulting, tax, or other professional services shall comply with standards promulgated by bodies designated by Council.[20]

### 3.2.5    Statement on Standards for Tax Services

The Defendants prepared tax returns for the Four Funds and the Trusts. As a result, the Defendants were required to comply with Statement on Standards for Tax Services Number 1 through 8.

Specifically, I note the following:

> In preparing or signing a return,…a member should not ignore the implications of information furnished and should make reasonable inquiries if the information furnished appears to be incorrect, incomplete, or inconsistent either on its face or on the basis of other facts known to a member. Further a member should refer to the taxpayers' returns from one or more prior years whenever feasible.

---

[19] ET 201.01.
[20] Council refers to the Council of the American Institute of Certified Public Accountants.

*Neal A. Cupersmith, et al. v. Piaker & Lyons, P.C., et al.*

> When preparing a tax return, a member should consider information actually known to that member from the tax return of another taxpayer if the information is relevant to that tax return and its consideration is necessary to properly prepare that tax return.

### 3.3   ANALYSIS OF DEFENDANTS' DEPARTURE FROM PROFESSIONAL STANDARDS

The Defendants performed the audit of the financial statements of McGinn Smith & Co., Inc. which required them to follow generally accepted auditing standards ("GAAS") and to determine whether the financial statements of McGinn Smith & Co., Inc. were stated in accordance with generally accepted accounting principles ("GAAP"). I note that despite the Ponzi scheme, the Defendants provided unqualified opinions on the financial statements of McGinn Smith & Co, Inc. until 2008, when they provided an explanatory paragraph concerning the substantial doubt about McGinn Smith & Co., Inc.'s ability to continue as a going concern. In performing their audit, the Defendants failed to properly adhere to professional standards or ignored the information that should have been obtained during the course of the audit which would have indicated the nature of the fraud. Specifically, I note the following:

- Defendants failed to maintain the proper professional skepticism in analyzing transactions or in performing proper analytical procedures to determine whether the expected returns and payments from such transactions were feasible. In other words, had they applied professional skepticism and proper analytical procedures, and adhered to Generally Accepted Auditing Standards, AU 150 and AU 329, Analytical Procedures, it should have been clear that timely payments were not able to be maintained under the investor notes given the performance of the underlying collateral.

- Defendants failed to properly analyse related party transactions, AU 334, Related Parties, and their effect on the financial statements including the risk of whether the financial statements were materially misstated, AU 314, Understanding the Entity and its Environment and Assessing the Risks of Material Misstatement.

- David Rees testified in the criminal matter that there were excessive fees taken by McGinn Smith with respect to the TDM Cable Funding deal. Simons admits to knowing about the fee in his testimony, yet fails to do additional audit work to investigate the

excessive fees.  In addition, David Rees testified that he initiated transfers from the Four
Funds to pay McGinn Smith payroll and that a decision was made to hide the bankruptcy
of Firstline to investors and to continue to fund the interest stream due to the investors
since it would affect McGinn Smith's ability to do future deals, yet Piaker did not detect
any of these frauds despite a requirement under Generally Accepted Auditing Standards
AU 314 and AU 316 that required Piaker to Understand the Entity and its Environment
and Assessing the Risk of Material Misstatement and the Consideration of Fraud in a
Financial Statement Audit.

- In addition, the workpapers I reviewed contained numerous instances wherein fees were
  recomputed by Piaker staff.  The calculations contain rates and percentages represented
  by McGinn Smith which were not consistent with the PPMs from various related parties.[21]
  These inconsistencies are examples of Defendants' failure to properly address related
  party transactions and demonstrate a reckless disregard for the AICPA Code of Conduct
  including Rule 102 and Rule 201.

In addition to performing audits of McGinn Smith & Co., Inc., the Defendants performed other
services for McGinn Smith including preparing tax returns for the Funds and a number of Trusts.
In order to comply with professional standards, the Defendants needed to honor the public trust
which requires them to perform services and to discharge their responsibilities with integrity,
objectivity, due professional care, and a genuine interest in serving the public while performing
their work.

I note that in accordance with applicable professional standards, the Defendants were also required
to obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations
in relation to any professional services performed.  In reviewing the documents produced to date,
I note that the Defendants obtained private placement memoranda ("PPMs"), bank statements and
the documents that provided them with knowledge as to the proper operations of the various
entities for which they rendered professional services.  Specifically, I note the emails wherein

---

[21] PL019693, PL019703, PL019698, PL019763.

*Neal A. Cupersmith, et al. v. Piaker & Lyons, P.C., et al.*

Timothy Paventi of Piaker has included in a list of questions a caption entitled, "Investment Details/Private Placement Memo/Loan Details/K-1's." Included in these emails, addressing the following funds: FIIN, FEIN, TAIN and FAIN, were questions regarding various investments, information concerning interest payable calculations, listing of investor notes and other details.   In addition, I noted email requests for bank statements and reconciliations for both contract accumulation and escrow amounts and schedules of investments, notes and interest calculations. As Piaker requested bank statements as part of their tax return preparation procedures, they had the ability to analyze activity in these accounts.

*Defendants knew or should have known that Investments were not consistent with the PPM*

Based upon the documents obtained by the Defendants, had the Defendants applied the appropriate level of professional skepticism as required by applicable professional standards, it should have been clear to the Defendants that the Private Placement Memorandums were not being adhered to and that this improper use of the Funds' proceeds took multiple forms.  For example, the Security Contracts were purchased from the Alarm Trusts for an amount greater than that which the Alarm Trusts initially paid and loans were made to the Alarm Trusts, as well as other McGinn Smith controlled entities.[22]  Specifically, I noted the following:

The amounts paid by the Trusts violated the terms of the Funds' Private Placement Memorandum ("PPM") which all contain the following statement in the "Use of Proceeds" section:.

> "If the investment is purchased from our managing member or an affiliate, we will not pay above the price paid by our managing member or such affiliate for the Investment…In other words, if we purchase an Investment from our managing member or any affiliate, we will pay the same price for the Investment that we would have paid if we had directly purchased the investment."[23]

---

[22] Declaration of Palen, pg. 9.
[23] Confidential Private Placement Memorandum of FEIN, FIIN, & FAIN pg. 9 and TAIN pg. 13.

*Neal A. Cupersmith, et al. v. Piaker & Lyons, P.C., et al.*

The Funds purchased Security Participation Trusts 1 through 4, part of the Alarm Trusts, for approximately $10.7 million.[24]   Security Participation Trusts 1 through 4 had paid a total of approximately $7.1 million for the underlying Security Contracts.[25]   The purchases by the Funds:

> "were negotiated by and between Smith for the Four Funds, as the "buyer," and McGinn for the pre-2003 alarm trusts as the "Seller."  The Purchase Agreements were signed by Smith on behalf of the Four Funds and McGinn on behalf of the SPT's"

Given the foregoing, it is apparent the purchase of these Security Participation Trusts was a violation of the Trusts' provision regarding affiliated transactions.  In addition, I note that the purchase amount paid for the Security Participation Trusts approximated the amount needed to redeem the related investors in them.[26]   This is a clear red flag that a fraudulent Ponzi scheme existed.

In addition to the purchase of the Security Participation Trusts, loans were made to the Alarm Trusts or their successor entities[27] from the Four Funds totaling over $2.1 million.  The purchases and loans from the Four Funds expended on the Alarm Trusts totaled approximately $12.8 million.[28]   Loans by the Funds were not limited to the Alarm Trusts as the Funds made loans to each other and, after their establishment, the Trusts.

The Funds' PPMs state an identical purpose in the Use of Proceeds:

> "We intend to use the net proceeds to acquire various public and/or private investments, which may include, without limitation, debt securities, collateralized debt obligations, bonds, equity securities, trust preferred, collateralized stock, convertible stock, bridge loans, leases, mortgages, equipment leases, securitized cash flow instruments, and any other investments that may add value to our portfolio."[29]

---

[24] Palen Exhibit 9.
[25] A Fund did not provide the entire amount used to acquire one of the Security Participation Trusts.  Only the amount paid by the Fund is reflected in the purchase price.  One Fund also ultimately purchased one of the Security Participation Trusts which was initially acquired by another Fund (TAIN purchased from FAIN).
[26] Declaration of Palen, pg. 10.
[27] Successor entities represent entities which the Alarm Trusts were "rolled over" or transferred to.
[28] Declaration of Palen Exhibit 8.
[29] Confidential Private Placement Memorandum of FEIN, FIIN & FAIN pg. 9 and TAIN pg. 13.

The loans made to affiliated companies do not meet the investment criteria as defined by the PPMs. In additions to loans, investments were made in affiliates of McGinn Smith. As of December 31, 2007, investments in affiliates accounted for over half of the investments of the Funds.[30] In fact, Smith, principal of McGinn Smith, who controlled the Funds and Trusts, acknowledged this questionable use of funds:

> "One of the most troubling aspects of the (Four Funds) investments has been my willingness to make substantial investments in affiliated entities, both because they were available and in some cases, such as Coventry, new investments were needed to support past investments. Thus, in the case of Coventry, alseT, EXBV the pattern was often the same; invest more money to support the original investment. In all cases this has proved to be a poor decision and has not only aggravated our cash flow problems, but puts us in some legal jeopardy as well."[31]

The Trusts commenced in 2006 and, as in the case of the Funds, amounts raised were also misused. Proceeds:

> "were supposed to be used to invest in specific streams of receivables, usually related to long term contracts for burglar alarm service, "triple play" (broadband, cable and telephone) service or luxury cruise cabin bookings."[32]

In the case of fifteen of the Trusts, approximately $32.5 million was raised and, according to their PPM's, on average, 85% of the amount, or $28.6 million, was to be invested.[33] However, only approximately $18.7 million was used in accordance with the PPMs. The Defendants prepared the initial tax returns for at least six of these entities.[34] In direct contrast to the PPMs, excessive underwriting fees were paid to McGinn Smith of approximately $3.2 million and individual McGinn Smith members received approximately $4.7 million.[35] One member of this group of Trusts, TDM Cable Funding, LLC, distributed $407,000 to Smith in 2006 which was not reported as income on his individual tax return. As previously noted, defendant Simons, principal and CEO of Piaker and Lyons, P.C., pled guilty to one count of delivering and disclosing a false 2006 federal

---

[30] Declaration of Palen, pg. 17 & Exhibit 14.
[31] Declaration of Palen, pg. 16-17.
[32] Declaration of Palen, pg. 21.
[33] Declaration of Palen, pg. 22, paragraph 68.
[34] Four of the six Trusts' began in 2007. McGinn Smith prepared tax returns for all six Trusts in 2008.
[35] Declaration of Palen, pg. 23.

income tax return for Smith. It is our understanding Simons, as part of the falsification, made an adjusting journal entry which reclassified the above $407,000 in fees paid to a loan, thereby understating income and overstating the assets of TDM Cable Funding. Given the facts and circumstances, this entry was improper and an obvious violation of the professional standard enumerated previously.

As noted previously from the record of the criminal proceeding, Simons testified that additional amounts of fees were recorded as loans for McGinn on his 2006 tax return and for both McGinn and Smith when they should have been treated as income rather than loans. In the criminal proceedings, Simons testified that when he asked questions about the loans, the email response answering the questions about the loans was in quotation marks ("loans"), yet despite the clear emphasis, Simons ignored his duty of professional skepticism, allowing the fraudulent tax return to be filed. Moreover, Simons admitted to preparing false personal financial statements for McGinn and Smith, which did not take into account the loan positions that were being taken on the fraudulent tax returns. These examples are consistent with our analysis of the Piaker work product which ignored various "red flags" of the fraud due to their long term relationship with McGinn Smith and its principals. Simons viewed McGinn Smith as a "trusted client for a number of years." This classification ignores Piaker's professional responsibilities.

Similar to the Funds, the Trusts did not generate enough income to make interest and principal payments. As a results, one Trust would be used to pay liabilities for another. This is another red flag concerning the existence of a fraudulent Ponzi scheme.

A look at the tax returns over time indicate that the Funds were not complying with the terms of the PPM.

Routinely, a trial balance serves as a starting point for an accountant's preparation of tax returns. Trial balances covering multiple years were obtained for the Funds. Contrary to the PPMs for

each of the Funds, a significant portion of their assets consisted of investments[36] in affiliated companies. **Table 4** below presents the high and low percentage of assets for each Fund invested in related companies during the period indicated.

**Table 4 – Fund Trial Balances, Percentage of Assets Invested in Affiliates**

| Abbr | Fund Name | Years | Min. % of Assets | Max. % of Assets |
|------|-----------|-------|------------------|------------------|
| FAIN | First Advisory Income Notes | 2005-2007 | 63.5% | 69.1% |
| FEIN | First Excelsior Income Notes | 2004-2007 | 48.2% | 56.2% |
| FIIN | First Independent Income Notes | 2004-2007 | 10.8% | 27.9% |
| TAIN | Third Albany Income Notes | 2004-2007 | 33.1% | 51.5% |

Despite the notable violation of the PPM's, the Defendants signed the tax returns. As the auditor of McGinn Smith, and as a responsible tax return preparer, basic knowledge of the components of assets, specifically related party transactions, would have made the Defendants familiar with the composition of these investments.

Each trial balance I examined contained adjustments. As mentioned, for the preparation of a tax return, acquiring a trial balance is a preliminary step in the process. Adjustments were determined and then posted to the trial balance. A separate listing of Adjusting Journal Entries accompanied each year's trial balance. The captions indicate the adjustments were prepared by the Defendants rather than McGinn Smith. Captions routinely contained the word, "Client" which provides evidence the adjustments were prepared by the Defendants rather than internal accounting staff. In order for an accountant to propose an adjustment, a basis for the entry must be established. In other words, the accountant presents an adjustment whose purpose is to correct a balance, classification or allocation. Inherent in the adjustment process is the determination of a correct presentation which can only be ascertained if an understanding is obtained which is sufficient to provide the accountant a basis to determine the client's presentation is incorrect and the tax return preparer's adjustment can correct it. The Defendants did not always accept the client's data without question when preparing the tax return but rather proposed adjusting entries. In reviewing

---

[36] Investments is defined broadly as any asset, regardless of form, included on the trial balance.

the adjustments included with the Four Fund's trial balances, I noted the following accounts had adjustments proposed by the Defendants:

| | |
|---|---|
| Due to McGinn Smith | Management Fees |
| Security Participation Trust 4 | Underwriting |
| Due to Others – FEIN | Due to FAIN |
| Security Participation Trust 3 | Contract Revenue |
| Equity Contribution | Other Income |
| Legal Fees | Due to FIIN |
| M&S Partners Loan | Interest Income |

In order to adjust the accounts in accordance with applicable professional standards, the Defendants had to possess an intimate knowledge of the Funds' operations which revealed improprieties.

As illustrated earlier, McGinn Smith was an audit client of the Defendants. The preceding paragraph described adjustments proposed by McGinn Smith in the preparation of Trust tax returns. Given the history of Defendants providing tax services to the Funds and Trusts, it would be an expected result to increase the level of professional skepticism regarding related parties and the transactions associated. In the audit workpapers provided, we did not find evidence of an increased level of scrutiny, beyond the identification of related party transactions, applied to this type of transaction.

The AICPA, in AU Section 334, provides guidance. Excerpts from the guidance provides insight into the increased level of scrutiny suggest by the AICPA

After identifying related party transactions, the auditor should apply the procedures he considers necessary to obtain satisfaction concerning the purpose, nature, and extent of these transactions and their effect on the financial statements. The procedures should be directed toward obtaining

and evaluating the sufficient appropriate audit evidence and should extend beyond inquiry of management.  Procedures that should be considered include the following

> A. Obtain an understanding of the business purpose of the transaction.
> B. Examine invoices, executed copies of agreements, contracts, and other pertinent documents, such as receiving reports and shipping documents.
> C. Determine whether the transaction has been approved by those charged with governance.
> D. Test for reasonableness the compilation of amounts to be disclosed, or considered for disclosure, in the financial statements.
> E. Arrange for the audits of intercompany account balances to be performed as of concurrent dates, even if the fiscal years differ, and for the examination of specified, important, and representative related party transactions by the auditors for each of the parties, with appropriate exchange of relevant information.
> F. Inspect or confirm and obtain satisfaction concerning the transferability and value of collateral.[37]

Further, the Section explains:

When necessary to fully understand a particular transaction, the following procedures, which might not otherwise be deemed necessary to comply with generally accepted auditing standards, should be considered.

> A. Confirm transaction amount and terms, including guarantees and other significant data, with the other party or parties to the transaction.
> B. Inspect evidence in possession of the other parry or parties to the transaction.
> C. Confirm or discuss significant information with intermediaries, such as banks, guarantors, agents, or attorneys, to obtain a better understanding of the transaction.
> D. Refer to financial publications, trade journals, credit agencies, and other information sources when there is a reason to believe that unfamiliar customers, suppliers, or other business enterprises with which material amounts of business have been transacted may lack substance.
> E. With respect to material uncollected balances, guarantees, and other obligations, obtain information about the financial capability of the other party or parties to the transactions.  Such information may obtained from audited financial statements, unaudited financial statements, income tax returns, and reports issued by regulatory agencies, taxing authorities, financial publications, or credit agencies.  The auditor should decide on the degree of assurance required and the extent to which available information provides such assurance.[38]

---

[37] AU Section 334.09
[38] AU Section 334.10

An analytical procedure which compared revenue received from each related party with the amounts indicated in the related private placement memo would have been a useful audit procedure for McGinn Smith.

*Losses being sustained were a Red Flag of the Fraud*

The Funds were routinely incurring losses under a number of different measures. Such losses would have alerted the accountant to the possibility of irregularities and, at a minimum, would have evoked an attitude of professional skepticism which would have expanded the procedures involved with the tax returns preparation.

***Table 5*** presents Net Income as reflected on the Trial Balances of the Funds.

| Entity | 2004 | 2005 | 2006 | 2007 | Total 2004-2007 |
|--------|------|------|------|------|-----------------|
| FAIN | $N/A | ($213,636) | ($225,317) | $229,142 | ($209,811) |
| FEIN | (909,877) | (1,321,125) | (1,516,349) | (2,570,916) | (6,318,267) |
| FIIN | 294,634 | (409,229) | (160) | 90,236 | (24,519) |
| TAIN | (417,154) | (2,803,384) | 199,012 | (2,943,133) | (5,964,659) |
| **Total** | ( $1,032,397) | ($4,747,374) | ($1,542,814) | ($5,194,671) | ($12,517,256) |

Table 5 – Net Income (Loss) per Trial Balance, 2004-2007

As clearly illustrated above, profitability, as measured by net income, was positive in just four of the fifteen periods presented. The combined deficit for the Funds during the period presented was in excess of $12 million, a figure that would invariably lead to questions regarding the sustainability of the Funds.

It is our understanding the trial balances provided were prepared using the accrual basis of accounting. In contrast to the trial balances, the tax returns for the Funds were prepared using the cash basis of accounting. The cash basis of accounting recognizes cash when received and expenses when paid. Simply, an analysis of cash basis tax returns may give a better idea of the sustainability of the business. ***Table 6*** presents net income as reported on tax returns.

*Neal A. Cupersmith, et al. v. Piaker & Lyons, P.C., et al.*

Table 6 – Net Income (Loss) per Tax Returns, 2004-2007[39]

| Entity | 2004 | 2005 | 2006 | 2007 | Total 2004-2007 |
|--------|------|------|------|------|-----------------|
| FAIN | $N/A | ($164,896) | ($718,766) | ($328,270) | ($1,211,932) |
| FEIN | (478,518) | (1,279,564) | (1,041,551) | (1,552,547) | (4,352,180) |
| FIIN | 278,672 | (380,546) | 217,158 | (502,305) | (387,021) |
| TAIN | (251,811) | (1,693,670) | (1,496,593) | (625,389) | (4,067,463) |
| **Total** | **( $451,657)** | **($3,518,676)** | **($3,039,752)** | **($3,008,511)** | **($10,018,596)** |

Over the four year period presented, not one of the Funds had cumulative positive net income and the Funds had combined losses totaling over $10 million. It would have been apparent that these entities were not viable on a tax return net income basis.

An additional level of analysis can perhaps best illustrate the Fund's cash shortages generated on a recurring basis. Eliminating transactions reported on a cash basis tax return which do not directly affect the amount of cash on hand in a particular year, can more accurately present the financial condition of the entity. Such a presentation is similar to a statement of cash flows. Examples of these types of transactions include gains and losses reported and amortization expenses. *Table 7* presents the cash basis net income or loss of the Four Funds by eliminating transactions which did not involve a source or use of cash during the period:.

Table 7 – Cash Basis Net Income (Loss), 2004-2007[40]

| Entity | 2004 | 2005 | 2006 | 2007 | Total 2004-2007 |
|--------|------|------|------|------|-----------------|
| FAIN | $N/A | ($79,373) | ($693,265) | ($326,192) | ($1,098,830) |
| FEIN | (185,685) | (750,238) | (583,250) | (364,504) | (1,883,677) |
| FIIN[41] | 428,005 | (231,213) | 366,491 | (352,972) | 210,311 |
| TAIN | (251,811) | (1,350,331) | (1,301,167) | (489,740) | (3,393,049) |
| **Total** | **( $9,491)** | **($2,411,155)** | **($2,211,191)** | **($1,533,408)** | **($6,165,245)** |

Even using this most conservative measure of cash flow, the Funds expended over $6 million more than received during this period. The Funds' purpose was to provide a certain level of returns to its investors. The deficits reveal the Funds were not operating as intended and the cash deficiency

---

[39] Declaration of K. Palen, Exhibit 15 – 15d.
[40] Declaration of K. Palen, Exhibit 15 – 15d.
[41] If FIIN's loss of $417,154 in 2003 is included it would make their cumulative total negative also.

had to be "made good" in some manner.  The Defendants had to realize the cash used to meet obligations needed to be provided and would have led to the discovery of improprieties.

*Other examples of wrongdoing by McGinn and Smith*

It should be noted that both McGinn and Smith were found guilty in 2013 of the following offenses:[42]

| | |
|---|---|
| McGinn: | Conspiracy to commit mail and wire fraud. |
| | Mail fraud (7 counts) |
| | Wire fraud (10 counts) |
| | Securities fraud (6 counts) |
| | Filing a false tax return (3 counts) (Years 2006 -2008) |
| Smith: | Conspiracy to commit mail and wire fraud. |
| | Mail fraud (3 counts) |
| | Wire fraud (2 counts) |
| | Securities fraud (6 counts) |
| | Filing a false tax return (3 counts) (Years 2006 -2008) |

*Defendants knew of the Ponzi scheme*

As demonstrated in the tax returns and related workpapers, FEIN's 2006 tax workpapers included a handwritten note which stated, "Per Dave Rees – represents funding of RTC Trust monthly cash flow shortages.  To be repaid with Trust receipts – after Trust debt is paid off - OR – will be purchased by another entity.  Not accruing any interest income on above loans as of 12/31."[43] In essence, the above handwritten note documents that Piaker knew of the Ponzi scheme as early as 2006 or recklessly disregarded applicable professional standards and failed to do anything about it.

---

[42] United States of America v. Timothy M. McGinn and David L. Smith.
[43] PL013477.

I found numerous others examples in the Piaker workpapers of similar instances wherein elements of the Ponzi scheme were documented, specifically I note:

- FEIN workpaper which identifies a $300,000 payment between FEIN and FIIN as being a "PMT to Cover Interest"[44]
- A borrowing from TAIN to FEIN to "cover redemptions"[45]
- A $300,000 general journal entry transaction showing a transfer between FIIN and FEIN for the Hill Redemptions.[46]
- Various payments between the Funds regarding alseT IP management showing transfers between FIIN, TAIN and FAIN.[47]

Based upon our analysis of the records and the cumulative knowledge gained by the Defendants during the longstanding relationship between Defendants and McGinn Smith, which included audit and tax services performed over a period of many years, made it likely that the Defendants knew of or recklessly disregarded the fraud.

### 3.4 ANALYSIS OF DEFENDANTS' CONTRIBUTION TO DAMAGES TO INVESTORS AND RELATED ISSUES

In preparing my analysis, I have considered causation and mitigation issues, from a damages perspective, in order to determine if Defendants' acts were a significant or material factor in contributing to the loss suffered by the Plaintiffs.

Section 102 of the AICPA Code of Professional Conduct has provided an interpretation under Rule 102- Integrity and Objectivity.  It states:

---

[44] PL013500, PL013529
[45] PL013501
[46] PL014091, PL013529
[47] PL013972, PL013821

Knowing misrepresentations in the preparation of financial statements or records.  A member shall be considered to have knowingly misrepresented facts in violation of rule 102 [ET Section 102.01] when he or she knowingly-

    A. Makes or permits or directs another to make, materially false and misleading entries in an entity's financial statements or records; or

    B. Fails to correct an entity's financial statements or records that are materially false and misleading when he or she has the authority to record an entry; or

    C. Signs, or permits or directs another to sign, a document containing materially false and misleading information.[48]

My analysis identified that Defendants' actions were a significant or material factor in the economic loss sustained by the Plaintiffs.  Further, it was likely that Defendants knew or were reckless in disregarding the fraud and their actions or inactions in abdicating their professional responsibilities aided in the perpetration of the fraud.  Specifically, I note:

- The Private Placement Memorandums indicates the types of securities that were permissible investments to be held by the Funds or the Trusts.  The Defendants obtained this information plus other information including bank statements, listing of investor purchases, rollovers, interest rate calculations, details and information on the various investments held.  Given the documents that I have seen to date, had the Defendants performed their services with integrity, objectivity and used due professional care, it would have been clear that these entities were not complying with the terms of their agreements with the investors.

- Trial balances for the Funds and the Trusts which showed the entities were operating at a loss indicating that the investments were not performing in a manner to pay investors in full.

- Defendants ignored handwritten notes in their 2006 tax return workpapers that documented the Ponzi scheme.

- Simons directed that false journal entries be entered in the client's accounting records.

- Simons, on behalf of Piaker, falsely characterized fees as loans which materially overstated assets of McGinn Smith entities.

---

[48] ET Section 102.02

- The Defendants ignored bank statement transactions of the Funds and Trusts reflecting improper withdrawals and the absence of interest payments due to the Funds and Trusts.

It may be argued that Plaintiffs have a duty to mitigate their damages. I note that Piaker, acting through Simons and Paventi did not withdraw from performing professional services for the McGinn Smith entities, when they became aware of extensive improper transactions in the course of their engagements. Had Piaker simply withdrawn as independent certified public accountants, the withdrawal would have necessarily become known by regulatory authorities, since registered broker-dealers *must* have audited financial statements. McGinn Smith would not have been able to continue to operate as a broker-dealer conducting private placements such as the Funds and Trust. Given the nature of the Ponzi scheme, it is unclear how the Plaintiffs could have mitigated their losses, except through actions such as this one to recover the losses that have been sustained.

### 3.5 DAMAGES

#### 3.5.1   Analysis of Losses Suffered by the Plaintiffs

The Plaintiffs each invested into various of the Funds and Trusts. Damages to the Plaintiffs rather simply, represent the amounts that they are still owed. *Exhibit 1* lists the current amount still due to the Plaintiffs (i.e. the Plaintiffs' damages).

#### 3.5.2   Prejudgment Interest

Counsel has informed us that Plaintiffs' are entitled to prejudgment interest. We reserve the right to update the calculation of prejudgment interest at the time of trial.

## 4. CONCLUSION

As noted previously, discovery is ongoing and I am waiting for Defendants to produce certain documents.   As a result, I may amended my conclusions as additional documents become available.   Based on the foregoing analysis, it is my opinion within a reasonable degree of professional certainty that:

- The Defendants knowingly or recklessly disregarded applicable professional standards  in performing services to McGinn Smith and their actions or inactions in abdicating their professional responsibilities aided in the perpetration of the fraud:
- Based upon the documents reviewed, either the Defendants knew about the Ponzi scheme or recklessly disregarded evidence of the fraud which would have led to its discovery.
- Defendants failure to adhere to professional standards was a significant or material factor in contributing to the loss suffered by the Plaintiffs;
- Plaintiffs have suffered damages in the amount of $10,712,712.62 as shown in *Exhibit 1*.

Stephen J. Scherf, CPA/ABV, CVA

Principal



ASTERION

215 S. Broad Street, 3rd Floor    215 893 9901        575 Lexington Avenue, 4th Floor    646 495 9340
Philadelphia, PA 19107            215 893 9903        New York, NY 10022

## Appendix A
## Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA
### Principal

sscherf@asterion-consulting.com

| | |
|---|---|
| **Biography** | Mr. Scherf has provided a wide array of accounting and consulting services to clients with an emphasis on business valuations, fraud investigations, bankruptcy, and litigation matters. Mr. Scherf has testified on numerous occasions in arbitrations, depositions and Federal Court. Mr. Scherf has taught for the American Institute of Certified Public Accountants, The National Association of Certified Valuators & Analysts and other professional organizations. |
| | Mr. Scherf's employment experience includes "Big Four," regional and a "boutique" accounting firm. In the private sector, Mr. Scherf held officer positions at a $2.5 billion financial institution, a major real estate developer and an investment firm. |

**Professional Memberships**

- American Arbitration Association National Roster of Commercial Panel of Neutrals
- FINRA Public Arbitrator
- American Institute of Certified Public Accountants
- Pennsylvania Institute of Certified Public Accountants
- Turnaround Management Association

- National Association of Certified Valuators & Analysts
- American Bankruptcy Institute
- American College Board of Forensic Examiners
- Association of Certified Fraud Examiners
- Association of Insolvency and Restructuring Advisors
- Institute for Internal Controls

**Education**

Mr. Scherf has a B.B.A. in Accounting from Temple University (1980) and a Master of Science in Finance (1986) and an Advanced Professional Certificate in Taxation (1987) from Drexel University. His education has been supplemented by various continuing education courses offered by a variety of professional organizations. He has spoken before professional and educational groups on various aspects of business valuation, litigation consulting, fraud investigations and economic damages.



**Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CTP, CVA**

Rule 26 Disclosure – Testimony

| *Date* | *Jurisdiction* | *Type* | *Matter* |
|---|---|---|---|
| 2015 | United States District Court<br>District of Utah | Deposition | N8 Medical, Inc. et al. v. Colgate Palmolive Company |
| 2015 | Court of Chancery<br>State of Delaware | Trial | Currency, Inc. et al. v. API Technologies, Corp. et al. |
| 2015 | Court of Common Pleas<br>Montgomery County, PA | Hearing | Joel Rosenwasser and Engraving Technologies, Inc. v.<br>C.J.D., Inc. et al. |
| 2015 | Court of Common Pleas<br>Luzerne County, PA | Hearing | Natalie Gunnshannon et al. v. Albert/Carol Mueller t/a<br>McDonalds et al. |
| 2014 | Court of Common Pleas<br>Northampton County, PA | Trial | John Cancelliere et al. v. Buckno Lipsicky & Company et al. |
| 2014 | United States District Court<br>Eastern District of Pennsylvania | Trial | David's Bridal, Inc. v. CELS Enterprises, Inc. |
| 2014 | Court of Common Pleas<br>Delaware County, PA | Hearing | Joseph F. Delaney, III v. F. Sean Bonner and Carne Capital, LLC |
| 2014 | United States District Court<br>Eastern District of Pennsylvania | Deposition | David's Bridal, Inc. v. CELS Enterprises, Inc. |
| 2014 | United States District Court<br>District of New Jersey | Hearing | United States of America v. Ashokkummar R. Babaria |



## Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CTP, CVA

Rule 26 Disclosure – Testimony

| *Date* | *Jurisdiction* | *Type* | *Matter* |
|--------|----------------|--------|----------|
| 2014 | Court of Chancery<br>State of Delaware | Trial | Kathryn Mennen et al. v. Wilmington Trust Company et al. |
| 2014 | Court of Chancery<br>State of Delaware | Deposition | Kathryn Mennen et al. v. Wilmington Trust Company et al. |
| 2014 | United States District Court<br>Eastern District of Pennsylvania | Trial | Pure Earth, Inc. v. Gregory Call v. Pure Earth Inc., et al. |
| 2013 | Court of Common Pleas<br>Bucks County, PA | Trial | Brian Opielski and Trimline Windows, Inc. v. Dennis Teeling et al. |
| 2013 | Superior Court of New Jersey<br>Camden County | Trial | Ozcan Yildiz and Storm Master West v. Storm Master Co., Inc. et al. |
| 2013 | United States District Court<br>Eastern District of Michigan | Deposition | Fen F, LLc v. Taylor Gifts, Inc. |
| 2013 | United States District Court<br>District of Delaware | Deposition | Jonathan and Trude Yarger et al. v ING Bank, FSB |
| 2013 | Superior Court of New Jersey<br>Camden County | Deposition | Ozcan Yildiz and Storm Master West v. Storm Master Co., Inc. et al. |
| 2013 | Court of Common Pleas<br>Montgomery County, PA | Trial | Howard Lapensohn, Trustee v. Jill Lapensohn, Trustee et al. |



## Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CTP, CVA
### Rule 26 Disclosure – Testimony

| *Date* | *Jurisdiction* | *Type* | *Matter* |
|---|---|---|---|
| 2013 | United States Bankruptcy Court<br>Eastern District of Pennsylvania | Trial | In Re: Amy L Styer<br>Commonwealth of Pennsylvania v. Amy L. Styer |
| 2012 | Court of Common Pleas<br>Philadelphia County, PA | Hearing | Unicon Holdings, Inc. et al.  v. New Start, LLC. |
| 2012 | United States Bankruptcy Court<br>Eastern District of Pennsylvania | Trial | In Re: Amy L Styer<br>Commonwealth of Pennsylvania v. Amy L. Styer |
| 2012 | Superior Court of New Jersey<br>Law Division Middlesex County | Trial | Thomas J. Sharp & Associates, Inc. et al. v. JH Cohn LLP et al. |
| 2012 | United States Bankruptcy Court<br>Southern District of Florida | Deposition | Maury Rosenberg v. DVI Receivables, XIV, LLC et al. |
| 2012 | Court of Common Pleas<br>Bucks County, PA | Hearing | In Re: Charles J. Bozzo, Deceased |
| 2012 | United States Bankruptcy Court<br>Eastern District of Pennsylvania | Hearing | 400 Walnut Associates, LP. |
| 2012 | United States Bankruptcy Court<br>Eastern District of Pennsylvania | Deposition | 400 Walnut Associates, LP. |
| 2011 | Superior Court of New Jersey<br>Law Division Camden County | Deposition | Camden County Community College et al. v Whitson's Food Service  et al. |



**Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CTP, CVA**
Rule 26 Disclosure – Testimony

| *Date* | *Jurisdiction* | *Type* | *Matter* |
|---|---|---|---|
| 2011 | United States District Court<br>Eastern District of Pennsylvania | Trial | Pure Earth, Inc. v. Gregory Call v. Pure Earth Inc., et al. |
| 2011 | Court of Common Pleas<br>Montgomery County, PA | Hearing | Ashley B. Fienman, et al. v. SCA, L.P. et al. |
| 2011 | Court of Common Pleas<br>Berks County, PA | Trial | Commonwealth of Pennsylvania v. Wesley Snyder et al. |
| 2011 | United States Bankruptcy Court<br>Eastern District of Pennsylvania | Hearing | 400 Walnut Associates, LP. |
| 2011 | United States Bankruptcy Court<br>Eastern District of North Carolina | Hearing | Croatan Surf Club, LLC |
| 2011 | United States Bankruptcy Court<br>Eastern District of Pennsylvania | Deposition | 400 Walnut Associates, LP. |
| 2011 | FINRA Arbitration<br>Philadelphia, PA | Hearing | John and Eiko Nernoff v. William Lex |
| 2011 | Court of Common Pleas<br>Bucks County, PA | Trial | Benjamin E. Long v Accentra, Inc. et al. |
| 2011 | United States Bankruptcy Court<br>Southern District of New York | Deposition | Responsible Person for Musicland Holding Corp. et al. v. Best Buy Co., Inc. et al. |



**Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA**
**Rule 26 Disclosure – Publications**

| *Date* | *Publication* | *Title* |
| --- | --- | --- |
| 2011 | National Litigation Consultant's Review | *Fair Value Accounting's Impact on Damages* |
| 2010 | National Litigation Consultant's Review | *Business Valuation in the "But For" World* |
| 2007 | ABF Journal (Co-Author with G Urbanchuk) | *Newton and Fraud: What Goes Up Must Come Down* |



ASTERION

## Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA
**Rule 26 Disclosure – Speaking Engagements**

| *Date* | *Description* | *Location* |
|---|---|---|
| 2015 | Pennsylvania Bar Institute<br>Tales from the Shareholder Wars | Philadelphia, PA<br>Mechanicsburg, PA |
| 2015 | Pennsylvania Bar Institute<br>Minority Shareholder Freezeout Litigation | Philadelphia, PA |
| 2015 | Pennsylvania Bar Institute<br>Commercial Litigation Institute – Damages and Remedies | Philadelphia, PA |
| 2015 | National Business Institute<br>Handling the Sale of a Business | Philadelphia, PA |
| 2014 | National Association of Certified Valuation Analysts<br>Solvency and Insolvency Testing | Webinar |
| 2014 | National Association of Certified Valuation Analysts<br>Advanced Valuation Applications and Models | New Orleans, LA |
| 2014 | Pennsylvania Institute of Certified Public Accountants<br>AICPA Testing for Goodwill Impairment Guide | Philadelphia, PA |
| 2014 | Montgomery County Bar Association<br>Intersection of Forensic Accounting and Bankruptcy | Norristown, PA |
| 2013 | Rutgers School of Law<br>Business Divorce | Camden, NJ |



**Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA**
Rule 26 Disclosure – Speaking Engagements

| *Date* | *Description* | *Location* |
|---|---|---|
| 2013 | National Association of Certified Valuation Analysts<br>Advanced Valuation Applications and Models | Chicago, IL |
| 2013 | Pennsylvania Bar Institute<br>Advanced Piercing the Corporate Veil | Philadelphia, PA |
| 2013 | Accounting for Lawyers<br>Schnader Harrison Segal & Lewis LLP | Philadelphia, PA |
| 2013 | Pennsylvania Bar Institute<br>Business Divorce | Mechanicsburg, PA |
| 2012 | National Association of Certified Valuation Analysts<br>Advanced Valuation Applications and Models | Philadelphia, PA |
| 2011 | Pennsylvania Institute of Certified Public Accountants<br>Ethics and Other Issues – An Update | Valley Forge, PA |
| 2011 | Pennsylvania Institute of Certified Public Accountants<br>Impairment Testing for Financial Reporting | Harrisburg, PA |
| 2011 | National Association of Certified Valuation Analysts<br>Advanced Valuation Applications and Models | Orlando, FL |
| 2011 | National Business Institute<br>Accounting 101 for Attorneys | Allentown, PA |



## Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA
**Rule 26 Disclosure – Speaking Engagements**

| *Date* | *Description* | *Location* |
|---|---|---|
| 2010 | National Association of Certified Valuation Analysts<br>Advanced Valuation Applications and Models | Chicago, IL |
| 2010 | Pennsylvania Institute of Certified Public Accountants<br>Fair Value Measurements | Harrisburg, PA |
| 2010 | American Society of Appraisers - Southern<br>New Jersey Chapter<br>Lost Profits and Business Destruction Damage Claims | Cherry Hill, NJ |
| 2010 | Office of Auditor Accounts – State of DE<br>The Expert's Role and Testimony | Dover, DE |
| 2009 | National Association of Certified Valuation Analysts<br>Advanced Valuation Applications and Models | Jersey City, NJ |
| 2009 | Pennsylvania Institute of Certified Public Accountants<br>Financial Institutions Conference<br>Valuation and SFAS 141R | Hershey, PA |
| 2009 | Montgomery County Bar Association and the Greater<br>Philadelphia Chapter of the PICPA – Strategies for<br>Clients in the Current Economic Crisis | Norristown, PA<br>Philadelphia, PA |
| 2008 | National Association of Certified Valuation Analysts<br>Advanced Valuation and Case Study Workshop | San Diego, CA |



## Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA
Rule 26 Disclosure – Speaking Engagements

| *Date* | *Description* | *Location* |
|---|---|---|
| 2008 | Pennsylvania Institute of Certified Public Accountants<br>Business Valuation Conference<br>FASB Valuation Issues | Harrisburg, PA |
| 2008 | Association of Government Accountants<br>Ponzi Schemes | Philadelphia, PA |
| 2007 | National Association of Certified Valuation Analysts<br>Advanced Valuation and Case Study Workshop | Washington, DC |
| 2007 | Fair Value Measurements SFAS 157<br>Pennsylvania Institute of Certified Public Accountants | Conshohocken, PA |
| 2007 | National Association of Certified Valuation Analysts<br>Normalizing and Projecting Earnings<br>Valuation Methods:  Alternatives and Decision Criteria | Philadelphia, PA |
| 2007 | National Association of Certified Valuation Analysts<br>Advanced Valuation and Case Study Workshop | Brookfield, WI |
| 2006 | Discounting of Damages, Selecting Appropriate Discount<br>Rate - Forensic & Litigation Services Conference<br>Pennsylvania Institute of Certified Public Accountants | King of Prussia, PA |
| 2006 | Business Valuation: How to Make or Break Your Case<br>Montgomery County Bar Association<br>Pennsylvania Institute of Certified Public Accountants | Norristown, PA |



ASTERION

**Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA**
Rule 26 Disclosure – Speaking Engagements

| *Date* | *Description* | *Location* |
|---|---|---|
| 2006 | National Business Institute<br>Financial Statement Analysis for the Non-Financial<br>Advisor in Pennsylvania | Philadelphia, PA |
| 2006 | National Association of Certified Valuation Analysts<br>Advanced Valuation and Case Study Workshop | San Antonio, TX |
| 2006 | National Association of Certified Valuation Analysts<br>Advanced Valuation and Case Study Workshop | Chicago, IL |
| 2005 | National Association of Certified Valuation Analysts<br>Valuation Methods:  Alternatives and Decision Criteria | Ft. Lauderdale, FL |
| 2005 | National Association of Certified Valuation Analysts<br>Valuation Methods:  Alternatives and Decision Criteria | Jersey City, NJ |
| 2005 | National Association of Certified Valuation Analysts<br>Advanced Valuation and Case Study Workshop | Philadelphia, PA |
| 2005 | Association of Government Accountants<br>Philadelphia Chapter<br>Business Valuation Fundamentals and Techniques | Lester, PA |
| 2005 | Association of Government Accountants<br>Philadelphia Chapter<br>Ownership and Acquisition Disputes and the Role of the<br>Forensic Accountant | Lester, PA |



ASTERION

**Stephen J. Scherf, CPA/ABV/CFF, CDBV, CFE, CICA, CIRA, CTP, CVA**
**Rule 26 Disclosure – Speaking Engagements**

| *Date* | *Description* | *Location* |
|--------|---------------|------------|
| 2004 | National Association of Certified Valuation Analysts<br>Valuation Methods:  Alternatives and Decision Criteria | Las Vegas, NV |
| 2004 | National Association of Certified Valuation Analysts<br>Valuation Methods:  Alternatives and Decision Criteria | Chicago, IL |
| 2004 | AICPA Conferences on Fraud and Litigation Services<br>Case Management | Phoenix, AZ |

Appendix B
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Documents Considered

| Document Description | Bates Range | |
|---|---|---|
| Amended Complaint | | |
| Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint | | |
| Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint | | |
| Defendants' Responses to Plaintiffs' First Set of Interrogatories with Exhibits A, B, C & D. | | |
| AICPA Code of Professional Conduct | | |
| Generally Accepted Auditing Standards | | |
| Statements on Auditing Standards | | |
| Declaration of Kerri L. Palen | | |
| Administrative Proceedings dated January 27,, 2014 and January 28, 2014 before the Securities and Exchange Commission, In the Matter of Donald Anthony, Jr., Frank H. Chiappone, Richard D. Feldmann, William F. Lex, Thomas E. Livingston, Brian T. Mayer, Philip S. Rabinovich and Ryan C. Rogers. | | |
| Plaintiff Investor Information, Schedule A, dated November 10, 2014 | | |
| Various spreadsheets of Investor Information | | |
| Various internet search information | | |
| Various documents regarding United States v. Timothy M. McGinn and David L. Smith and matters regarding the Securities and Exchange Commission and Receivership | | |
| Documents from Computer Hard drive | | |
| Plaintiff individual investor information | | |
| FEIN AND TAIN trial balances, 2004- 2007 | | |
| FIIN trial balances, 2003 - 2007 | | |
| FAIN trial balances, 2004 - 2007 | | |
| Private Placement Memorandums | | |
| United States of America v. Timothy M. McGinn and David L. Smith, Superseding Indicment. | | |
| United States of America v. David L. Smith, Judgement of Acquital | | |
| United States of America v. Timothy M. McGinn, Judgement of Acquittal | | |
| United States of America v. Timothy M. McGinn, Verdict Form. | | |
| United States of America v. David L. Smith, Amended Judgement | | |
| United States of America v. David L. Smith, Judgement of Acquital | | |
| United States of America v. Timothy M. McGinn and David L. Smith, Verdict Form, David L. Smith | | |
| United States of America v. Timothy M. McGinn and David L. Smith, Verdict Form, Trial Transcipt. | | |
| Securities and Exchange Commision v. McGinn Smith and Co., et al, and Lynn A. Smiith and Nancy McGinn | | |
| Securities and Exchange Commision v. McGinn Smith and Co., et al, and Lynn A. Smiith and Nancy McGinn, Final Judgement as to Defendant Timothy M. McGinn. | | |
| Securities and Exchange Commision v. McGinn Smith and Co., et al, and Lynn A. Smiith and Nancy McGinn, Final Judgement as to Defendant David L. Smith. | | |
| United States of America v. Ronald Simons Plea Agreement. | | |
| Testimony of Ronald Simons dated May 9, 2014. | | |
| United States of America v. Timothy M. McGinn and David L. Smith, Verdict Form, David L. Smith. | | |
| SEC v. McGinn, Smith & Co., et.al., Order to Show Casue, Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief | | |
| SEC v. McGinn, Smith & Co., et.al., Plaintiff's Memorandum of Law in Support of Application for Emergency Relief | | |
| SEC v. McGinn, Smith & Co., et.al., Declaration of Israel Maya. | | |
| SEC v. McGinn, Smith & Co., et.al., Declaration of Lara Shalov Mehraban | | |
| SEC v. McGinn, Smith & Co., et.al., Declaration of RoseAnn Daniello | | |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL003548 | PL012075 |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL012204 | PL015069 |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL015725 | PL016527 |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL016589 | PL017148 |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL018931 | PL020370 |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL023747 | PL024176 |
| Documents furnished in response to first demand for production of documents of Piaker & Lyons | PL030000 | PL030123 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| **Ayers, Deanna M.** | McGinn Smith | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $75,000.00 |
| | McGinn Smith | FIIN Secured Senior Notes | | | $68,199.64 |
| | McGinn Smith | TDM Verifier Trust 11 Contract Certificates 9% | | | $28,619.55 |
| | McGinn Smith | TDM Verifier Trust 11 Contract Certificates 9% | | | $9,539.85 |
| | | | | Total | $181,359.04 |
| **Borel, Garth S. & Elizabeth C.** | McGinn Smith (Garth S.) | TDM Verifier Trust 08R Contract Certificate 9% | | | $75,000.00 |
| | McGinn Smith (Joint) | FAIN Secured Senior Notes | | | $91,995.36 |
| | McGinn Smith (Joint) | FIIN Secured Senior Notes | | | $90,932.86 |
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | | | $90,932.86 |
| | | | | Total | $348,861.08 |
| **Bove, Richard L. & Lynn A.** | McGinn Smith (Richard L.) | FIIN Secured Senior Notes | | | $45,466.43 |
| | McGinn Smith (Richard L.) | FAIN Secured Senior Notes | | | $13,799.30 |
| | McGinn Smith (Richard L.) | FAIN Secured Senior Notes | | | $32,198.37 |
| | McGinn Smith (Richard L.) | FAIN Secured Senior Subordinated Notes | | | $50,000.00 |
| | McGinn Smith (Richard L.) | FAIN Secured Senior Subordinated Notes | | | $15,000.00 |
| | McGinn Smith (Richard L.) | TDM Verifier Trust 11 Contract Certificates 9% | | | $9,539.85 |
| | McGinn Smith (Richard L.) | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $9,023.75 |
| | McGinn Smith (Richard L.) | FIIN Secured Senior Notes | | | $22,733.21 |
| | McGinn Smith (Richard L.) | Integrated Excellence Senior Trust 08 | | | $6,836.50 |
| | McGinn Smith (Richard L.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $105,000.00 |
| | McGinn Smith (Richard L.) | FIIN Secured Senior Subordinated Notes | | Due: 12/15/2008 | $30,000.00 |
| | McGinn Smith (Richard L.) | FIIN Secured Senior Subordinated Notes | | Due: 12/15/2008 | $15,000.00 |
| | McGinn Smith (Richard L.) | FIIN Secured Senior Notes | | | $45,466.43 |
| | McGinn Smith (Lynn A.) | TAIN Secured Senior Notes | #112 | | $50,013.07 |
| | | | | Total | $450,076.91 |
| **Burke, James J.** | | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $285,000.00 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | | Integrated Excellence Senior Trust 08 | | | $10,254.75 |
| | | FAIN Secured Senior Subordinated Notes | | | $20,000.00 |
| | | FAIN Secured Senior Notes | | | $22,998.83 |
| | | FAIN Secured Senior Notes | | | $18,399.07 |
| | | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $10,000.00 |
| | | | | Total | $366,652.65 |
| Connell, Kathleen A. | McGinn Smith | TAIN Secured Senior Notes | | | $45,466.43 |
| | McGinn Smith | TAIN Secured Senior Notes | | | $22,733.21 |
| | | | | Total | $68,199.64 |
| Conti, Pierre & Beverly J. | McGinn Smith (Beverly J.) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $40,000.00 |
| | McGinn Smith (Beverly J.) | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $13,535.63 |
| | McGinn Smith (Beverly J.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $140,000.00 |
| | McGinn Smith (Beverly J.) | FAIN Secured Senior Notes | | | $13,799.30 |
| | McGinn Smith (Beverly J.) | FAIN Secured Senior Notes | | | $73,596.29 |
| | McGinn Smith (Beverly J.) | FAIN Secured Senior Notes | | | $13,799.30 |
| | McGinn Smith (Beverly J.) | FAIN Secured Senior Notes | | | $13,799.30 |
| | McGinn Smith (Beverly J.) | FIIN Secured Senior Notes | | | $113,666.07 |
| | McGinn Smith (Beverly J.) | FIIN Secured Senior Notes | | | $13,639.93 |
| | McGinn Smith (Pierre) | TAIN Secured Senior Notes | | | $59,106.36 |
| | McGinn Smith (Pierre) | FIIN Secured Senior Subordinated Notes | | Due 12/15/2008 | $55,000.00 |
| | McGinn Smith (Pierre) | FAIN Secured Senior Notes | | | $41,397.91 |
| | McGinn Smith (Pierre) | TAIN Secured Senior Notes | | | $250,137.36 |
| | McGinn Smith (Pierre) | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $18,047.50 |
| | McGinn Smith (Pierre) | FIIN Secured Senior Notes | | | $13,639.93 |
| | McGinn Smith (Pierre) | FIIN Secured Senior Notes | | | $90,932.86 |
| | McGinn Smith (Pierre) | TAIN Secured Subordinated Notes 7.75% | | Due: 12/15/2009 | $200,000.00 |
| | McGinn Smith (Pierre) | FIIN Secured Senior Notes | | | $45,466.43 |
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | | | $45,466.43 |
| | | | | Total | $1,255,030.60 |
| Cote, Peter C. & Gayle L. | McGinn Smith (Joint) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $200,000.00 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | | | $181,865.72 |
| | McGinn Smith (Joint) | FAIN Secured Senior Subordianted Notes | | | $100,000.00 |
| | McGinn Smith (Joint) | TDM Verifier Trust 11 Contract Certificates 9% | | | $23,849.63 |
| | McGinn Smith (Joint) | FIIN Secured Senior Notes | | | $181,865.72 |
| | McGinn Smith (Joint) | Firstline Trust 07 B Senior Contract Certificates 9.5% | | Due: 10/1/2011 | $41,383.90 |
| | McGinn Smith (Joint) | Firstline Trust 07 B Junior Contract Certificates 11% | | Due: 10/1/2012 | $39,678.45 |
| | | | | Total | $768,643.42 |
| Criniti, Sharon L. & Criniti, Charles | McGinn Smith (Joint) | FIIN (non-qualified) | #62 | | $22,733.21 |
| | McGinn Smith (Charles) | Firstline Trust 07 9.25% Senior Contract Certificates | #R20 | 7/16/2007 Due: 9/1/2010 | $44,241.80 |
| | McGinn Smith (Charles) | McGinn Smith Firstline Funding, LLC | | | $6,500.00 |
| | McGinn Smith (Charles) | TDM Verifier Trust 08R Contract Certificate 9% | #8 | 6/30/2009 Due: 12/31/2010 | $50,000.00 |
| | McGinn Smith (Charles) | Integrated Excellence Senior Trust 08 | #21 | 7/8/2008 Due: 6/1/2013 | $20,509.50 |
| | McGinn Smith (Charles) | Fortress Trust 08 | #53 | 12/19/2008 Due: 10/01/2011 | $39,822.21 |
| | McGinn Smith (Joint) | TDMM Cable SR. Trust 09 9% | #41 | 7/7/2009 Due: 2/1/2012 | $72,497.68 |
| | | | | Total | $256,304.40 |
| Crist, Henry S. | McGinn Smith | Firstline Trust 07 B Senior Contract Certificates 9.5% | | Due: 10/1/2011 | $24,830.34 |
| | McGinn Smith | Firstline Trust 07 B Junior Contract Certificates 11% | | Due: 10/1/2012 | $59,517.68 |
| | McGinn Smith | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $31,583.13 |
| | McGinn Smith | FAIN Secured Senior Subordinated Notes | | | $40,000.00 |
| | McGinn Smith | FAIN Secured Senior Subordinated Notes | | | $20,000.00 |
| | McGinn Smith | TAIN Secured Senior Notes | | | $272,798.58 |
| | | | | Total | $448,729.73 |
| Cupersmith, Neal A. & Frances | McGinn Smith (Joint) | FEIN Secured Senior Notes | #18 | 1/30/2008 1/30/2009 | $91,995.36 |
| | | | | Total | $91,995.36 |
| Dale, Mary S. & Kenneth | McGinn Smith (Kenneth) | TDMM Cable Senior Trust 09 9% | | | $31,173.04 |
| | McGinn Smith (Kenneth) | FEIN Secured Senior Notes | | | $22,998.83 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | McGinn Smith (Joint) | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $45,118.75 |
| | McGinn Smith (Joint) | Firstline Trust 07 B Senior Contract Certificates 9.5% | | Due: 10/1/2011 | $41,383.90 |
| | McGinn Smith (Mary S.) | Fortress Trust 08 | | | $35,839.98 |
| | McGinn Smith (Mary S.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $65,000.00 |
| | McGinn Smith (Mary S.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $55,000.00 |
| | McGinn Smith (Mary S.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $25,000.00 |
| | | | | Total | $321,514.50 |
| DeSantis, Barry & Jean A. | McGinn Smith (Joint) | FEIN Secured Senior Notes | #20 | 1/30/2008 Due: 1/30/2009 | $68,996.51 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | #24 | 2/5/2007 Due: 1/30/2009 | $50,000.00 |
| | | | | Total | $118,996.51 |
| Dittmann, Gerald & Kathy | | TDM Verifier Trust 08R Contract Certificate 9% | | | $45,000.00 |
| | | | | Total | $45,000.00 |
| Forsyth, Alice J. & Susan J. | McGinn Smith (Alice) | Firstline Trust 07 9.25% Senior Contract Certificates | | Due: 9/1/2010 | $24,332.99 |
| | McGinn Smith (Alice) | FAIN Secured Senior Notes | | | $13,799.30 |
| | McGinn Smith (Alice) | FAIN Secured Senior Notes | | | $50,597.44 |
| | McGinn Smith (Alice) | FAIN Secured Senior Subordinated Notes | | | $65,000.00 |
| | McGinn Smith (Alice) | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $31,583.13 |
| | McGinn Smith (Alice) | FIIN Secured Senior Notes | | | $45,466.43 |
| | McGinn Smith (Alice) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $45,000.00 |
| | McGinn Smith (Alice) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $120,000.00 |
| | McGinn Smith (Alice) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $20,000.00 |
| | McGinn Smith (Alice) | TDM Verifier Trust 07 R Contract Certificates | | | $10,000.00 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | | Due: 9/1/2010 | $35,000.00 |
| | McGinn Smith (Joint) | Firstline Trust 07 9.25% Senior Contract Certificates | | Due: 9/1/2010 | $28,757.17 |
| | McGinn Smith (Joint) | TDMM Cable Senior Trust 09 9% | | | $23,379.78 |
| | | | | Total | $512,916.24 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| **Gavin, George M. & Nancy A.** | IRA Services (George M.) | FIIN Secured Senior Notes | IRA143406 | | $104,575.79 |
| | IRA Services (George M.) | FIIN Secured Subordinated Notes | IRA143406 | Due: 12/15/2008 | $35,000.00 |
| | IRA Services (George M.) | TAIN Secured Senior Subordinated Notes 7.75% | IRA143406 | Due: 12/15/2009 | $15,000.00 |
| | IRA Services (George M.) | FIIN Secured Senior Notes | IRA143406 | | $72,746.29 |
| | IRA Services (George M.) | FEIN Secured Senior Subordinated Notes | IRA143406 | Due: 1/30/2009 | $10,000.00 |
| | IRA Services (George M.) | FEIN Secured Senior Subordinated Notes | IRA143406 | Due: 1/30/2009 | $10,000.00 |
| | IRA Services (George M.) | FEIN Secured Senior Subordinated Notes | IRA143406 | Due: 1/30/2009 | $85,000.00 |
| | IRA Services (George M.) | FAIN Secured Senior Notes | IRA143406 | | $18,399.07 |
| | IRA Services (George M.) | FAIN Secured Subordinated Notes | IRA143406 | | $20,000.00 |
| | IRA Services (George M.) | Integrated Excellence Senior Trust 08 | IRA143406 | 7/16/2008 Due: 6/1/2013 | $10,254.75 |
| | McGinn Smith (Nancy) | FAIN Secured Senior Notes | | | $36,798.14 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $35,000.00 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $10,000.00 |
| | McGinn Smith (Joint) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $25,000.00 |
| | | | | Total | $487,774.04 |
| **Gillis, Angus T. & Joanne V.** | McGinn Smith (Angus T.) | TAIN Secured Senior Notes | | | $118,212.72 |
| | McGinn Smith (Angus T.) | FIIN Secured Senior Subordinated Notes | | Due: 15/15/2008 | $105,000.00 |
| | McGinn Smith (Angus T.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $15,000.00 |
| | McGinn Smith (Angus T.) | Firstline Trust 07 B Senior Contract Certificates 9.5% | | 12/19/2007 Due: 10/1/2011 | $12,415.17 |
| | McGinn Smith (Angus T.) | Integrated Excellence Senior Trust 08 | | 7/2/2008 Due: 6/1/2013 | $6,836.50 |
| | McGinn Smith (Angus T.) | TDMM Cable Senior Trust 09 9% | | 2/19/2009 Due: 2/1/2012 | $7,793.26 |
| | McGinn Smith (Joanne V.) | TDM Verifier Trust 08 Contract Certificate 36 | | 1/10/2008 Due: 12/31/2010 | $55,000.00 |
| | McGinn Smith (Joanne V.) | TDMM Cable Senior Trust 09 9% | | 6/12/2009 Due: 2/1/2012 | $7,793.26 |
| | | | | Total | $328,050.91 |
| **Glasgow, Katherine C.** | McGinn Smith | TDMM Cable Senior Trust 09 9% | DLY-059749 | 5/19/2009 Due: 2/1/2012 | $77,932.60 |
| | | | | Total | $77,932.60 |
| **Harnish, Richard** | | TDM Verifier Trust 08R Contract Certificate 9% | | | $50,000.00 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | | FAIN Secured Senior Notes | | | $9,199.54 |
| | | FAIN Secured Senior Notes | | | $9,199.54 |
| | | TAIN Secured Senior Notes | | | $22,733.21 |
| | | TDM Verifier Trust 08R Contract Certificate 9% | | | $25,000.00 |
| | | TDM Verifier Trust 08R Contract Certificate 9% | | | $25,000.00 |
| | | TAIN Secured Senior Subordinated Notes 7.75% | | 12/15/2009 | $200,000.00 |
| | | TDM Verifier Trust 08R Contract Certificate 9% | | | $100,000.00 |
| | | | | Total | $441,132.29 |
| Judge, Joanne M. & Oppenheimer, Paul E. | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | #30 | 1/30/2008 Due: 1/30/2009 | $50,000.00 |
| | McGinn Smith (Joint) | TAIN Secured Senior Subordinated Notes 7.75% | #90 | 12/15/2007 Due: 15/15/2009 | $100,000.00 |
| | McGinn Smith (Joint) | FEIN Secured Senior Notes | #65 | 39112 | $45,997.68 |
| | McGinn Smith (Joint) | FAIN Secured Senior Subordinated Notes | #49 | 38804 | $100,000.00 |
| | McGinn Smith (Joint) | TDM Verifier Trust 11 Contract Certificates 9% | R09-107 | 8/15/2009 Due: 2/15/2011 | $66,778.95 |
| | | | | Total | $362,776.63 |
| Lynch, Kenneth John | | TAIN Secured Senior Subordiated Notes 7.75% | | | $40,000.00 |
| | | TAIN Secured Senior Subordiated Notes 7.75% | | | $15,000.00 |
| | | | | Total | $55,000.00 |
| Mayberry, Joseph J. Mary Alice | McGinn Smith (Joseph) | Integrated Excellence Senior Trust 08 | | | $10,254.75 |
| | McGinn Smith (Joseph) | FIIN Secured Senior Notes | | | $68,199.64 |
| | McGinn Smith (Joseph) | TAIN Secured Senior Notes | | | $9,093.29 |
| | McGinn Smith (Joseph) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $30,000.00 |
| | McGinn Smith (Joseph) | FAIN Secured Senior Notes | | | $9,199.54 |
| | McGinn Smith (Joseph) | FAIN Secured Senior Subordinated Notes | | | $10,000.00 |
| | McGinn Smith (Joint) | FIIN Secured Senior Notes | | | $45,466.43 |
| | McGinn Smith (Joint) | FAIN Secured Senior Subordinated Notes | | | $10,000.00 |
| | McGinn Smith (Joint) | FIIN Secured Senior Notes | | | $4,546.64 |
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | | | $9,093.29 |
| | | | | Total | $205,853.58 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| **Mazda, Russell** | | | | | |
| | McGinn Smith | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $40,000.00 |
| | McGinn Smith | FAIN Secured Senior Subordinated Notes | | | $30,000.00 |
| | McGinn Smith | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $10,000.00 |
| | McGinn Smith | FAIN Secured Senior Subordinated Notes | | | $25,000.00 |
| | | | | Total | $105,000.00 |
| **Mohr, Barry J.** | | | | | |
| | McGinn Smith | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $225,000.00 |
| | McGinn Smith | FAIN Secured Senior Subordinated Notes | | | $200,000.00 |
| | | | | Total | $425,000.00 |
| **Morrison, John & Nancy** | | | | | |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | #63 | 1/30/2007 Due: 1/30/2009 | $30,000.00 |
| | McGinn Smith (Joint) | FIIN Secured Senior Notes | #38 | 39431 | $22,733.21 |
| | McGinn Smith (Joint) | TDM Verifier Trust 07 9% 24 Month Contract Certificates | | | $10,000.00 |
| | | | | Total | $62,733.21 |
| **Myers, Ellen L. & Ray M.** | McGinn Smith (Ellen) | FAIN Secured Senior Notes | | | $13,799.30 |
| | McGinn Smith (Ellen) | FEIN Secured Senior Notes | | | $119,593.97 |
| | McGinn Smith (Ellen) | FAIN Secured Senior Subordinated Notes | | | $15,000.00 |
| | McGinn Smith (Ellen) | Integrated Excellence Senior Trust 08 | | | $6,836.50 |
| | McGinn Smith (Ellen) | FIIN Secured Senior Subordinates | | Due: 12/15/2008 | $10,000.00 |
| | McGinn Smith (Ellen) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $80,000.00 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $77,500.00 |
| | | | | Total | $322,729.77 |
| **Nemeth, Ilene and Robert** | Ilene Nemeth | FAIN Secured Senior Notes | | | $55,197.22 |
| | Ilene Nemeth | Fortress Trust 08 | | | $7,964.44 |
| | Robert Nemeth | FAIN Secured Senior Subordinated Notes | | | $20,000.00 |
| | Joint | Firstline Trust 07 9.25% Senior Contract Certificates | | | $11,060.45 |
| | Joint | FAIN Secured Senior Subordinated Notes | | | $15,000.00 |
| | Joint | FAIN Secured Senior Subordinated Notes | | | $45,000.00 |
| | Joint | FAIN Secured Senior Notes | | | $13,799.30 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | | | | Total | $168,021.41 |
| Nixon, Macon L. & Audrey E. | McGinn Smith (Macon L.) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $25,000.00 |
| | McGinn Smith (Macon L.) | FIIN Secured Senior Notes | | | $18,186.57 |
| | McGinn Smith (Macon L.) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $40,000.00 |
| | McGinn Smith (Macon L.) | FAIN Secured Senior Subordinated Notes | | | $80,000.00 |
| | McGinn Smith (Macon L.) | FAIN Secured Senior Subordinated Notes | | | $25,000.00 |
| | McGinn Smith (Macon L.) | FEIN Secured Senior Notes | #29 | | $22,998.83 |
| | McGinn Smith (Audrey E.) | FEIN Secured Senior Notes | #28 | | $18,399.07 |
| | | | | Total | $229,584.47 |
| Pavlishin, Paul & Dolores | McGinn Smith (Joint) | TDM Verifier Junior Notes | | Due: 12/15/2009 | $30,000.00 |
| | McGinn Smith (Joint) | Integrated Excellence Senior Trust 08 | | | $17,091.25 |
| | McGinn Smith (Joint) | TDM Verifier Trust 07R Contract Certificates | | | $50,000.00 |
| | | | | Total | $97,091.25 |
| Peters, Mary Wanda | McGinn Smith | Integrated Excellence Senior Trust 08 | | | $51,273.75 |
| | McGinn Smith | TDMM Cable Sr Trust 09 | | | $19,483.15 |
| | | | | Total | $70,756.90 |
| Robbins, Cynthia | McGinn Smith | TDM Verifier Trust 08R Contract Certificate 9% | TDM Verifier Trust 08R Contract Certificate 9% | | $25,000.00 |
| | | | | Total | $25,000.00 |
| Rogers, Albert K. & Ruth C. | McGinn Smith (Albert) | FAIN Secured Senior Notes | | | $275,986.08 |
| | McGinn Smith (Albert) | FIIN Secured Senior Notes | | | $122,759.36 |
| | McGinn Smith (Albert) | FIIN Secured Senior Notes | | | $183,684.37 |
| | McGinn Smith (Albert) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $150,000.00 |
| | McGinn Smith (Albert) | FAIN Secured Senior Subordinated Notes | | | $80,000.00 |
| | McGinn Smith (Joint) | FIIN Secured Senior Notes | | | $27,279.86 |
| | McGinn Smith (Ruth) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $75,000.00 |
| | McGinn Smith (Ruth) | FIIN Secured Senior Notes | | | $11,821.27 |
| | | | | Total | $926,530.94 |
| Seigford, Patricia E., William L. | McGinn Smith (Patricia E.) | TDM Verifier Trust 08R Contract Certificate 9% | IRA144915 | 39994 | $55,000.00 |
| | McGinn Smith (Joint) | TDM Verifier Trust 08R Contract Certificate 9% | | 40008 | $10,000.00 |

Exhibit I
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | | | | Total | $65,000.00 |
| Shannon, David T. & Kathleen M. | McGinn Smith (Joint) | FEIN Secured Senior Notes | #35 | 1/30/2008 Due: 1/30/2009 | $22,998.83 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | #28 | 3/1/2007 Due: 1/30/2009 | $50,000.00 |
| | McGinn Smith (Joint) | TDM Verifier Trust 07 9% 24 Month Contract Certificates | | | $25,000.00 |
| | | | | Total | $97,998.83 |
| Spurrier, David J. & Esther D. | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | #79 | Due: 1/30/2009 | $95,000.00 |
| | McGinn Smith (Joint) | TAIN Secured Senior Subordinated Notes 7.75% | #66 | Due: 12/15/2009 | $25,000.00 |
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | #90 | | $18,186.57 |
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | | | $9,093.29 |
| | | | | Total | $147,279.86 |
| Starr, Harvey T. | McGinn Smith | FAIN Secured Senior Notes | | | $40,000.00 |
| | | | | Total | $40,000.00 |
| Sullivan, Linda M. | McGinn Smith (Linda M.) | FEIN Secured Senior Notes | MSA-000868 | 1/30/2008 Due: 1/30/2009 | $22,998.83 |
| | | | | Total | $22,998.83 |
| Trainor, Charles W. & Patricia M. | McGinn Smith (Joint) | FAIN Secured Senior Subordinated Notes | #120 | 39096 | $50,000.00 |
| | | | | Total | $50,000.00 |
| Vanasek, John M. | McGinn Smith | FAIN Secured Senior Subordinated Notes | IRA145233 | | $30,000.00 |
| | McGinn Smith | Firstline Trust 07 B Senior Contract Certificates 9.5% | IRA145233 | 1/31/2008 Due: 10/1/2011 | $8,276.78 |
| | | | | Total | $38,276.78 |
| Vossenberg, Anne H. | McGinn Smith | TDMM Cable Senior Trust 09 9% | | 6/12/2008 Due: 2/1/2012 | $116,898.90 |
| | | | | Total | $116,898.90 |
| Wargo, Robert J. (St. Joseph the Worker Church) | McGinn Smith | TDM Verifier Trust 08 Contract Certificate 36 | | | $100,000.00 |
| | McGinn Smith | TDMM Cable Senior Trust 09 9% | | | $77,932.60 |
| | McGinn Smith | Integrated Excellence Senior Trust 08 | | | $27,346.00 |
| | | | | Total | $205,278.60 |
| Wright, David M. | McGinn Smith | TDMM Cable Senior Trust 09 9% | | | $7,793.26 |
| | McGinn Smith | FEIN Secured Senior Notes | | | $78,196.05 |
| | McGinn Smith | FIIN Secured Senior Notes | | | $9,093.29 |
| | | | | Total | $95,082.60 |
| Zakroff, Peter S. and Theresa M. | McGinn Smith (Peter) | TDM Verifier Trust 09 10% Contract Certificates | | Due: 12/31/2011 | $13,535.63 |
| | McGinn Smith (Joint) | McGinn, Smith Firstline Funding, LLC | | | $6,000.00 |

Exhibit 1
Neal A. Cupersmith et al. v. Piaker & Lyons, P.C. et al.
Damages

| Name (Last, First) | Company Name | Product / Market | Contract Number | Issue Date / Maturity Date | Contract Value |
|---|---|---|---|---|---|
| | McGinn Smith (Joint) | FAIN Secured Senior Subordinated Notes | | | $20,000.00 |
| | McGinn Smith (Joint) | FAIN Secured Senior Notes | | | $22,998.83 |
| | McGinn Smith (Joint) | TAIN Secured Senior Notes | | | $27,279.86 |
| | McGinn Smith (Joint) | Firstline Trust 07 B Junior Contract Certificates 11% | | Due: 10/1/2012 | $15,871.38 |
| | McGinn Smith (Joint) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $40,000.00 |
| | McGinn Smith (Joint) | TAIN Secured Senior Subordinated Notes 7.75% | | Due: 12/15/2009 | $30,000.00 |
| | McGinn Smith (Joint) | FEIN Secured Senior Subordinated Notes | | Due: 1/30/2009 | $25,000.00 |
| | McGinn Smith (Joint) | Fortress Trust 08 | | | $7,964.44 |
| | | | | Total | $208,650.14 |

| | |
|---|---|
| **Total Damages** | **$10,712,712.62** |